## DECISIONS IN NON-ENUMERATED CASES

IN THE

# SUPREME COURT OF JUDICATURE

OF THE

# STATE OF NEW YORK.

---

## THE PEOPLE, ex rel. Manning, vs. NEW YORK C. P.

A *defendant*, against whom a verdict is rendered for *nominal damages* in an action of *tort*, may, *after the verdict*, procure an assignment of a judgment against the *plaintiff* in the suit in which the verdict is rendered, and may claim to *set off* such judgment against the judgment entered upon the verdict, although such latter judgment consists *entirely of cost*, with the exception of the nominal damages, notwithstanding the *lien* of the attorney.

The equities of the parties are superior to those of the attornies, and the *lien* of the latter must yield to the equitable claims of the former.

Attornies will, however, be protected against the *frauds of the parties* to the suit; as where *notice* is given to a party liable to the payment of costs that they belong to the attorney, and the costs are subsequently paid to the client of the attorney, the party will, notwithstanding, be compelled to repay them to the attorney.

Where a party obtains a verdict, and the judgment entered thereon is subsequently reversed, a *venire de novo* awarded, and the *costs directed to abide the event* of the suit—such party, though he obtains a verdict on the *second trial*, is not entitled to the *costs of defending the writ of error*.

An *alternative mandamus* may be made returnable at a special term ; it is not process, within the meaning of the statute regulating the *teste* and return of process.

MOTION for a *mandamus* to compel the common pleas to set off a judgment, upon this state of facts : Daniel Strang sued John Whitehead, in the circuit court of the United States

VOL. XIII.            82

NEW YORK, for the southern district of New York, for the recovery of a
May, 1835. debt. The suit was dismissed for want of jurisdiction in the
The People court, on the ground that Whitehead was a citizen of a *terri-*
N. York C. P. *tory,* and not of a *state* of the union. Whitehead thereupon
brought his suit against Strang and his attorney, Manning, in
the C. P. of New York for *false imprisonment* for the arrest in
the circuit court, and recovered judgment in 1831 ; which
judgment was *reversed* in this court on writ of error, a *venire
de novo* awarded, and costs ordered to obide the event of the
suit.    On the 22d September, 1834, a second trial was had,
and a verdict rendered for the plaintiff for *six cents* damages ;
on which verdict the costs were taxed, on the 11th October, at
$192,56.   Strang, after the failure in the U. S. court, having
commenced his suit in this court against Whitehead, obtain-
ed judgment against him in October, 1832.    After the ver-
dict in the second trial of the C. P., to wit, *two days* thereaf-
ter, Manning obtained an assignment of the judgment of
Strang against Whitehead from one E. S. Strong, alleged to be
the *administrator* of Strang, (Strang having died *insolvent* pre-
vious to the second trial in the C. P.)    The consideration of
the assignment was the costs of Manning, as the attorney of
Strang, in the several suits between Strang and Whitehead,
alleged to amount to $500.    In November, 1824, Manning
applied to the New York common pleas to set-off so much of
this judgment as would be necessary to satisfy the judgment
against him in favor of Whitehead.    This motion was resist-
ed by Garr, the attorney of Whitehead, on the ground of his
*lien* as attorney, and also on the ground of an assignment of the
judgment against Manning, executed by Whitehead on the
18th October, 1834, previous to any knowledge of the assign-
ment to Manning of the judgment against Whitehead.    It
also appeared that Whitehead was insolvent.    The common
plea refused the set off.    Manning thereupon applied to this
court for a mandamus directing the C. P. to allow the set-off,
and also to reduce the cost taxed against him in the suit for
false imprisonment : the plaintiff having had allowed to him,
on taxation, $89,72, the costs of *defending the writ of error* in
this court.   The motion was resisted in this court on the follow-
ing grounds : 1.  That it was not shown with sufficient cer-

tainty that the person assuming to act as the *administrator* of Strang, was ad·ninistrator in fact; 2. That Manning ought not to be considered a *bona fide* assignee, not having paid any thing for the assignment; 3. That the effect of the assignment being to defeat the attorney's *lien*, his client being insolvent, it should not be held good, especially when apparent, as here, that such was the express object of the assignee, 4 *Cowen*, 416 ; 4. The lien of the attorney should be protected against all persons having *express* or *implied* notice thereof, 15 *Johns. R.* 406 ; 5. That it should not be permitted to a defendant, against whom a judgment in *tort* is obtained, to set-off a judgment against *an insolvent plaintiff*, brought up for the express purpose of set-off, as the effect of allowing such set-off, is to place such plaintiff out of the protection of the law. The counsel for the attorney also cited 7 *Cowen*, 481, and 2 *Johns. R.* 278.

*By the Court*, Savage, Ch. J. " Opposite demands arising upon judgments, may upon motion be set off against each other whenever such set-off is equitable, though the judgments are in different courts, and though the parties to the different records are not the same." *Montague on Set-offs*, 6. 1 *H. Black.* 217. 2 *Str.* 891. 8 *T. R.* 69. 2 *Black.* 896. 3 *Wils.* 396. 4 *T. R.* 123. In setting off judgments in the English courts, there is a difference between the *king's bench* and *common pleas*, in regard to the attorney's lien for his costs: the former holding that the costs are not to be set off, but only the balance of the judgment after the costs are paid ; the latter, that costs may be set off, the lien of the attorney being subordinate to the equities of the parties. This practice was considered in *Hall* v. *Ody*, 2 *Bos. & Pal.* 28, by Lord Eldon, when chief justice of the common pleas, inconsistent with principles of justice ; but it was answered by Rooke, justice, that the practice was not unfair, for the attorney looks in the first instance to the personal security of his client, and if beyond that he can get any further security, it is a casual advantage ; and it was remarked by Lord Eldon, that as the attorney had acted with a knowledge of the *settled practice* he could not claim the benefit of what the learned judge con-

NEW YORK, sidered a more just principle. This Court has long since
May, 1835. adopted the principle of the English court of *common pleas :*
The People that the equities of the parties are superior to those of the at-
v. tornies. The practice of setting off judgments does not all
N. York C. P. depend on the statute of set-offs, but upon the jurisdiction
of the courts over the parties and over their own process.
It is true, indeed, that it is in pursuance of the policy of the
statute, and, as was said by De Grey, chief justice, in *Baker*
v. *Braham,* 2 *Black.* 869, 3 *Wils.* 396, *S. C.* the courts
have gone a little farther than the letter of the statutes, by
the rule of analogy, in cases within their power ; costs have
been set off against costs, and also against debt and costs.

As far back in the history of our own court as in *Scher-
merhorn* v. *Schermerhorn,* 3 *Caines,* 190, a judgment in the
common pleas was allowed to be set off against one recover-
ed in this court. In the case of *Brewerton* v. *Harris* 1 *Johns.
R.* 144, this court refused to interfere, because the motion
should have been made in the common pleas ; the execution
to be stayed or reduced in amount was one to be issued, if
at all, from the common pleas ; and therefore it was held the
motion should be made in that court, particularly as such an
order must be enforced by attachment.

In the case now before us, if both parties were living and
solvent, there could be no difficulty ; it would be a matter of
course to order the set off. The attornies would have no lien
for their costs. We interfere to protect attornies from the
frauds of the parties to the suit. In such cases, the attorney
must give the opposite party notice of his claim for his costs,
or a *bona fide* payment of them to the party will not be con-
sidered fraudulent. But that doctrine has no direct applica-
tion in a case like this : as was said by *Spencer,* justice, in
*Martin* v. *Hawks* 15 *Johns R.* 407, a different rule has been
adopted by this court in such a case. Here we consider, as
I have before observed, the equities of the parties superior to
those of their attornies. The attornies in this case have not
given notice of their liens for their costs, nor was such notice
necessary ; they present themselves as the *assignees* of the
judgments in favor of their respective clients. Before notice
of the motion for a set-off, no notice was given by either, of

the assignment held by him : nor is notice at all important, as its only effect is to protect the assignee against the improper act of the assignor after the assignment.

In these motions, the court regards the rights of assignees, and protects them; but where a party is only nominally an assignee, without any interest, the court will not consider him an assignee. The rights of an assignee came before the court distinctly in the case of *Chamberlain* v. *Day*,3 *Cowen*. 353. There C. recovered a judgment against D. in August,1824, which was assigned to Wiley. D. had previously purchased a judgment against C. For aught appearing in the case, both assignments were *bona fide*, and without notice ; but we said that Wiley took the judgment which he purchased, subject to the prior right of D., to set off the judgment which he had previously purchased. There no actual notice of the assignment was given, nor was that fact considered at all important. Day was assignee in fact, and his right to set off had attached before Wiley became the purchaser, and the set off was made. The case of *Bradt* v. *Koon*, 4 *Cowen*, 416, is much relied on in opposition to this motion. In the report of that case dates are not given, which are sometimes very important. Bradt had recovered a judgment in this court upon a stipulation to pay costs to Mr. *Van Vechten*, the attorney of Bradt. These costs were due to Van Vechten, and that known to Koon when he purchased the judgment of Lawrence against Bradt. It must have appeared that Koon had received notice, which constituted Van Vechten the assignee, before he purchased Lawrence's judgment ; this must have appeared to bring the case within that of *Martin* v. *Hawks*. In that view, the case of *Bradt* v. *Koon* is in perfect accordance with all the cases of assignees. Van Vechten was the assignee, and that known to Koon ; and yet, with a knowledge of that fact, the latter purchased a judgment against Bradt, who he knew had no interest in the judgment against which he proposed to set off the one he had purchased; in other words, he proposed to set off a judgment, which he had purchased against Bradt, in payment of one belonging to Mr. Van Vechten against himself. A judgment, to be set off, must be owned absolutely by the person who asks to set it

NEW YORK, off; and if purchased conditionally, the set-off will be refused.
May, 1835   7 *Cowen*, 469.   It seems that a party may purchase a judg-
The People  ment for the purpose of set-off, if it be done *bona fide ;* but it
v.      cannot be done where the nominal assignee is a mere trustee
N. York C. P.
for another.   7 *Cowen*, 480.

The questions, then, in the case before us are, whether
the judgments were fairly purchased, and are actually own-
ed by the parties in interest.   As to the purchase by Mr.
*Garr*, of Whitehead's judgment, no question has been made ;
but as to the purchase by Mr. *Manning*, of the judgment of
Strang against Whitehead, two objections are interposed : 1.
That it was made *after* the verdict in favor of Whitehead ;
2. That it was without consideration.   As to the first objection,
it is answered, that the agreememt for the purchase was made
some time previous to the trial, though not completed until
afterwards; but in reality it is no objection to the set-off,
though the purchase was made expressly for the purpose of
set-off.   Such was the case of *Chamberlain* v. *Day.*   There
Day had purchased the judgment, which he set off apparent-
ly for that purpose.   In the case of *Bradt* v. *Koon,* the objec-
tion was not that Koon had purchased Lawrence's judgment
for the purchase of set-off ; but that before the purchase, Bradt
had assigned his judgment to Van Vechten, in contemplation
of law.   The defendant in such judgment cannot object to it ;
a judgment must be paid, and it is indifferent, in point of law,
whether the original plaintiff or an assignee is in fact the own-
er.   So, as to Whitehead, it was a matter of no moment to
him whether the judgment was owned by Strang or Manning;
it was a debt which he was bound to pay.   And when the
assignment was made, Whitehead was the owner of the ver-
dict in his favor, against Manning, and had power to dis-
charge it, together with the costs of his attorney.   As to the
*consideration :* part of the judgment consisted of a bill of costs
in the suit, which, as between attorney and client, belonged
to the attorney.   It also appears, from Manning's affidavit,
that Strang was indebted to him for costs to about $500.
This is consideration enough, certainly, as between the par-
ties ; and as to Whitehead, he cannot object the want of con-
sideration on the ground of his own insolvency.   As to Mr.

Garr's assignment, he took it subsequent to the assignment to *Manning*, and as was said in *Chamberlain* v. *Day*, subject to all the equities existing against Whitehead's judgment, at the time of the assignment to him; at that time Manning's right of set off had attached. It is contended, however, that Manning's assignment was in fraud of Garr's lien for his costs. It is an answer to this allegation, that as between the parties to a suit, an attorney has no lien for his costs; the equities of the parties are superior to those of the attorneys, and the only ground on which the court, in *Martin* v. *Hawks*, considered the attorney the assignee as to his costs was, that the attorney, Mr. Jordan, had given *notice* to the defendant that the judgment was for costs, and belonged to him. No such notice was given to Mr. Garr. It is not sufficient to say that Mr. Manning, being a lawyer, knew that Mr. Garr owned the costs. The same is true of every defendant, for every man is presumed to know the law. Mr. Manning also knew that without such notice the costs were a proper set off against the party; as without it the attorney could not be considered the assignee.

The *costs* of opposing the motion for the reversal in this court were improperly taxed. A party is never entitled to costs of a trial or motion in which he was unsuccessful.

<div style="text-align:right; font-style:italic;">

NEW YORK,
May, 1835.

The People
v.
N. York C. P.

</div>

Alternative mandamus granted as to set-off.[*]

---

[*] The writ of *alternative mandamus* issued in this cause was *tested* on the *twenty-fourth* day of January, 1835, and made returnable at the *first special term* of this court, after service of the same. A motion was made by Mr. *Garr*, to set it aside for *irregularity*, on the grounds, 1. that it was not *tested on* any day within the *two first weeks* of the January term; and 2. was not made *returnable* on any day in the *same term*, or the *next term*, 2 *R. S.* 197, § 5, but was made returnable in *vacation*, as special terms or motion days can be held only in vacation, *statutes of* 1830, *p.* 208. The CHIEF JUSTICE, in deciding this motion, said : " The alternative writ of mandamus is not pro- " cess, within the meaning of the statute regulating the *teste* and *return* of "process; it is in the nature of a rule to show cause, 4 *Cowen*, 403, 1 *Johns* " *R*. 64, and liable to be moulded, by the discretion of the court, according " to its practice, in such manner as shall best promote the cause of jus- tice"—and accordingly denied the motion.