# ELY a. COOK.

*New York Common Pleas; Special Term, April,* 1858.

*Again, General Term, June,* 1859.

### Insolvent's Discharge.—Attorney and Client.—Costs.— Set-off.—Defences.

Under the provisions of the Revised Statutes relative to the discharge of insol-
vents (2 *Rev. Stats.*, 16), the affidavit which the debtor is required to annex to
his petition must be made in the manner and at the time prescribed by the
statute, or the officer acquires no jurisdiction.

In a case in which such proceedings were taken before a recorder, the affidavit
was sworn to in the first instance before a commissioner. On the day on which
the order to show cause was returnable, the recorder signed the *jurat* to the
affidavit, but it was neither subscribed, nor sworn to, by the debtor, in his
presence.

*Held,* that the proceedings were without jurisdiction, and the discharge void.

---

Before the attorneys undertook the defence of the suit, they were informed by
the defendant that he was insolvent, and they agreed with him that the costs
should belong to them, as their compensation. They prevailed in the action,
and recovered a judgment for costs in his favor, which he assigned to them.

*Held,* that the judgment was not a proper matter of set-off against a judg-
ment against the defendant, held by the plaintiff against whom the judgment
for costs was recovered. The attorney's claim, in such a case, is not one of
lien, but of ownership.*

---

\* The same rule was held in the *Supreme Court (First District, General Term, May,*
1859), on appeal, in the case of Roberts a. Carter, from an order at special term
denying a motion to set-off the judgment against a cross-judgment, which was
claimed by the attorney. The facts are stated in the opinion.

*J. Fitch,* for the appellant.

*E. Terry,* for the respondent.

By the Court.—Davies, J.—In July, 1857, the referee to whom these causes
were referred made report therein, awarding a sum in each. In the last case, to
the then plaintiff, Carter, the sum of $149.17. Immediately on the report being
made, Carter assigned the same, and all his interests therein, and in the cause,
to Terry, his attorney, in consideration of services rendered by Terry as his attor-
ney, and for moneys advanced by Terry to carry on the suit. On such assign-

Ely *a.* Cook.

*It seems,* that though a defendant is not to be permitted to avail himself of a defence which appears only upon his evidence, and was not stated in his answer, yet if it appears, from the plaintiff's own evidence, that he is not entitled to the relief prayed, the court will not assist him.

---

ment being made, Terry caused himself to be substituted as plaintiff, instead of Carter; and on the 23d of July, 1857, perfected judgment against Roberts, for the sum of $319.56. On the 3d of August, 1857, Roberts, on the report of the referee, made in his favor, perfected judgment against Carter for the sum of $1040.12. This judgment was appealed to the general term, and there affirmed. At a special term, September 14, 1857, a motion was made to offset the judgment in the first above-entitled action, against the judgment in the second above-entitled action, and which, after hearing counsel, was denied with costs, but leave was given to Roberts to move for a stay of proceedings, to prevent Terry from proceeding to collect his judgment, pending the appeal.

The motion for a stay came on before Mr. Justice Roosevelt, on the 9th of October, 1857, and an order was made granting the stay until the decision of the appeal in the first above-entitled action. On appeal this order was affirmed at general term, and the decision leaves us at liberty to consider the question now presented, precisely as if no stay had been granted. We think the justice at special term was in error, in holding that this court, at general term, had decided that the lien of the attorney for his costs, and the rights which he had acquired as the actual assignee, for value, of the judgment against Roberts, before the recovery of the judgment against his assignor, could be defeated by allowing the set-off asked for. We do not see that any such question was decided, or intended to be decided, either by the general term, or the justice who heard the motion for a stay at the special term.

Terry was an equitable assignee, to the extent of his costs, of the judgment against Roberts, and an actual assignee for value of the residue, before the recovery of the judgment of Roberts against Carter. The question presented for decision on this appeal is whether, *on motion,* this court will allow the set-off, and thus deprive the attorney, not only of his lien for costs, but of his rights as actual assignee of the judgment.

The cases are numerous where the courts have protected the lien of the attorney. And they proceed upon the principle that the court, in the exercise of its equitable powers, will protect the lien of the attorney to the extent of his costs, and this rule is equally observed and maintained, as well in courts of law as in equity. (Dunkin *a.* Vandenburgh, 1 *Paige,* 622, and cases there cited; Gihon *a.* Fryatt, 2 *Sandf. S. C. R.,* 638; Sweet *a.* Bartlett, 4 *Ib.,* 661; Nash *a.* Hamilton, 3 *Abbotts' Pr. R.,* 35; Peckham *a.* Barcalow, *Lalor's Sup. to Den.,* 112; Spear *a.* Heyer, 2 *Whit. Pr. R.,* 255.)

In this court, it has been the practice to allow set-offs of judgments, though the effect would be to destroy the lien of the attorney for his costs. This rule and the reason for it are stated by SAVAGE, Ch. J., in The People *a.* N. Y. Common Pleas (13 *Wend.,* 649). He there states that, in setting off judgments in the English courts, there is a difference between the King's Bench and Common Pleas, in regard to the attorney's lien for his costs: the former holding that the costs are not to be set off, but only the balance of the judgment after the costs are paid; the latter, that the costs may be set off, the lien of the attorney being subordinate to the equities of the parties.

Trial by the court at special term, and appeals from the judgment rendered.

On the 29th day of November, 1850, Cook, one of the defend-

He says that this court has long since adopted the principle of the English Common Pleas, that the equities of the parties were superior to those of the attorney. With high respect for the authority of these opinions, I cannot concur in the position that, as to the costs earned in the cause, the equities of the parties are superior to those of the attorney, by whose labor and efforts they have been acquired, and through whose instrumentality alone any right to them exists. I am unable to appreciate the force of the arguments by which it is maintained that B., having a judgment against A. for a debt due by A. to him, has a superior equity to take the earnings of A.'s attorney to pay that debt, over the attorney who has earned the costs, and without whose labor they would not nominally be due to A. It seems to me that the equities of the attorney are superior. He is entitled to the costs as the fruits of his labor, talents, and skill, and this court does not permit his client to receive them in fraud of his rights. This subject is ably discussed by DALY, J., in Ward *a.* Syme (9 *How. Pr. R.*, 16). His argument seems to me unanswerable.

The Court of Exchequer in England, and the Court of Chancery, were inclined to follow the rule of the Common Pleas, but the decisions in each were conflicting ; and in 1833, on the adoption of the new rules, the rule of the King's Bench was made applicable to all the courts. The rule, therefore, adopted in this court from the Common Pleas of England, has been abandoned there, and has never been followed in the Courts of Chancery of this State, or in the Superior Court, or Court of Common Pleas. And it seems to me that it has been abandoned in this court, especially in this district. If it has not, it is time that it was.

In Peckham *a.* Barcalow (*Lalor's Sup to Den.*, 112), where the facts are almost identical with those presented on this motion, the motion to set off a judgment assigned to an attorney was refused. The court, by BRONSON, J., say : " The assignment was made in payment of the costs due from the defendant to his attorney. I see no reason why this was not as good a consideration as though the attorney had paid so much money. The attorney's lien for his costs is not always protected against the equities existing between the parties. But I think he is the assignee of the judgment, and is entitled to the same protection as any other assignee."

The rule in the Superior Court is rigidly adhered to, which is, to sustain the lien of the attorney, whenever it can be done without infringing upon the statute of set-off, and that where his right to costs was established, the court would protect it so far as it could, " because, however the matter might be technically, the costs were in reality the property of the attorney." (Smith *a.* Lowden, 1 *Sandf. S. C. R.*, 696 ; Gihon *a.* Fryatt, 2 *Ib.*, 638 ; Sweet *a.* Bartlett, 4 *Ib.*, 661.)

In all these cases, motions were made to set off judgments, the effect of which would be to deprive the attorney of his costs, and the same were denied. The rights of the attorney are protected in the Court of Common Pleas. (Ward *a.* Wordsworth, 1 *E. D. Smith*, 598.) The opinion of DALY, J., in this case, contains an elaborate review of all the cases on this point, and the practice of the different courts. And Judge Harris, referring to it in Haight *a.* Holcomb (16 *How. Pr. R.*,

ants in the present action, had confessed judgment to Ely, the plaintiff. On the 31st day of December, 1851, Cook obtained a discharge under the two-thirds act. In October, 1856, Cook recovered judgment for costs against Ely, in a creditor's action,

163), says : " The whole subject has received, at the hands of Judge Daly, a more complete and thorough examination than I have met with elsewhere. The opinion itself is a fine specimen of juridical learning and sound argument."

We have seen that the Supreme Court of this State, in 1843, in Peckham *a.* Barcalow (*cited supra*), refused to permit a set-off of judgments to defeat the attorney's lien. The same decision was made at special term, in the second district, in 1853, by STRONG, J. (Van Pelt *a.* Boyd, 8 *How. Pr. R.*, 319.) EDWARDS, J., in Spear *a.* Heyer (2 *Whit. Pr.*, 255), in 1852, in this district, held, that the rule allowing a set-off of judgments, without reference to the attorney's lien for costs, was inequitable, and that where there had been an assignment of the costs by the party to his attorney, and before the opposite party had acquired a right of set-off, the assignment should be sustained, and he denied the motion to set-off.

In this case, the assignment was made by the client to his attorney, before the opposite party had obtained his judgment, and, consequently, before his right to a set-off existed. But the precise point presented in this case has been decided at a general term in this State, and in accordance with the decision in this district, and in the Superior Court, and Court of Common Pleas. In Nash *a.* Hamilton (3 *Abbotts' Pr. R.*, 35), the general term, in the sixth district, held that where a verdict and the judgment to be entered thereon were assigned by the plaintiff to his attorney, the assignment was effectual to prevent the defendant setting off a judgment, subsequently recovered in his favor against the plaintiff, against the judgment so assigned.

In that case, on the 3d of February, 1855, the plaintiff obtained a verdict, in an action for slander, of $75, and on the 5th of May, 1855, a judgment was entered on the verdict for $196 47 damages and costs. On the 3d of February, immediately on the verdict being rendered, the plaintiff assigned it to his attorney for a valuable consideration. This consideration was to secure his attorney for services in the action, and for money lent to him, and paid out for him as such attorney. On the 14th of February, 1855, the defendant recovered a judgment against the plaintiff, on a promissory note, in a justice's court, for $49.83 damages and costs, and which was docketed in the county clerk's office, April 5, 1855.

The defendant paid to plaintiff's attorney, on account of the judgment, $145, and moved to set off his judgment against the plaintiff's judgment, and the court, at general term, held the set-off could not be made. In Williams *a.* Batterman (4 *Barb.*, 47), this court held that an attorney has a lien on a judgment recovered by him for his costs. He is equitably entitled to the costs as a compensation for his labor and expense of prosecuting or defending the suit. He is regarded as an assignee of the judgment, to the extent of the costs included therein. (Citing 1 *Paige*, 626 ; 15 *Johns.*, 406.) And the court in that case also held that, being regarded as the assignee, to the extent of his costs, he was entitled to all the protection of an assignee.

In Haight *a.* Holcomb (16 *How. Pr. R.*, 160), HARRIS, J., held, that it was a well-settled doctrine before the Code, that although costs were in form recovered by the prevailing party, and became a part of the judgment in his favor, yet the

which Ely had brought upon the first-mentioned judgment, seeking to set aside an assignment made by Cook. That creditor's action was commenced in 1851. The Messrs. Sherwood, who were Cook's attorneys in that action, agreed with him, when

attorney was to be regarded as an equitable assignee to the extent of his costs, and his rights as such would be protected, and that this doctrine had not been changed by the Code.

This case was heard at general term (16 *How. Pr. R.*, 173), and the judgment affirmed, the court holding that the attorney's lien should be maintained under, as well as before the Code, and that it could be so maintained to the extent of the costs appearing by the roll. And such lien was maintained on the ground that the attorney was an equitable assignee of that portion of the judgment covering the costs in the action.

But, in the present case, the attorney was not only the equitable assignee of that portion of the judgment covering the costs, but he was the actual assignee for value of the whole judgment, before the plaintiff Roberts had obtained his judgment, and before his equity arose to set off sufficient of it to liquidate the judgment against him. It seems to me that this latter position is a conclusive answer to the motion to set off. (Graves *a*. Woodbury, 4 *Hill*, 559.)

In the present case, the report of the referee and Carter's claim were assigned to his attorney, who, on the 23d of July, 1857, entered up judgment in his own name, for $319.56. On the 3d of August following, Roberts perfected and docketed judgment against Carter, for $1040.12, and now moves to set off sufficient of that judgment to satisfy the judgment assigned to Terry.

For the reasons above given, we think this cannot be done, and that the order at special term, allowing such set-off, should be reversed without costs, and said motion be denied.

CLERKE, J.—I concur, without any reference to the liens of attorneys. Terry stands before us as an assignee of a claim transferred to him, before the recovery of judgment in the first suit. In the absence of any proof of fraud or want of consideration between Carter and Terry, we are to treat the latter precisely like any other person who might have been the assignee ; and surely in such case, under the same circumstances, we never would have allowed the set-off.

MARTIN *a*. KANOUSE (*Supreme Court, First District, Special Term, January*, 1859), also illustrates this subject.

The action was brought to set off two judgments. The defendant Kanouse, who was originally sole defendant, set up in his answer that Garr, his attorney, had a lien on the judgment held by Kanouse. Subsequently Garr obtained an order making him also a defendant, and answered, claiming a lien. (The proceedings are reported 2 *Ante*, 327, 330, 390.) On a trial by the court, the following decision was rendered :

DAVIES, J.—If I were hearing this matter upon a motion, I should certainly protect, to the extent this court has always protected, the equitable lien of the attorney. The cases where this has been done are numerous, and proceed on the principle that the court, in the exercise of its equitable powers, will protect the

they undertook the defence of the action, that the costs, if any, should belong to them; and upon the recovery of the judgment for costs, Cook assigned it to them.

Ely brought the present action against both Cook and the

attorney's lien. And the rule prevailed, as well in courts of law as in equity. (Dunkin *a.* Vandenburgh, 1 *Paige*, 622, and cases there cited; Gihon *a.* Fryatt, 2 *Sandf. S. C. R.*, 638; Sweet *a.* Bartlett, 4 *Ib.*, 661; Nash *a.* Hamilton, 3 *Abbotts' Pr. R.*, 35; Peckham *a.* Barcalow, *Lalor's Sup. to Den.*, 112; Spear *a.* Heyer, 2 *Whit. Pr.*, 255.) These, and numerous other cases which might be cited, are all upon motion. And in such cases, as is said in Gihon *a.* Fryatt (2 *Sandf.* 638), "When the question arises on pleadings in a suit, the rules of *law* must govern, but where the application is to the discretion of the court, we will decide it as ·shall be just."

And the same court say, in Sweet *a.* Bartlett (2 *Sandf.* 661), "whatever the rule in the Supreme Court might be, they had determined, in Smith *a.* Lowden (1 *Sandf.*, 196), they would establish such a practice as would be consistent with equity and justice. That they had determined to sustain the lien of the attorney, whenever it could be done *without infringing upon the statute of set-off*, and that when his right to the costs was established, they would protect it so far as they could, because, however the matter might be technically, the costs were in reality his property." But, as was observed by COWEN, J., in Nicoll *a.* Nicoll (16 *Wend.*, 448), "the practice of the courts is one thing, while each is left to prescribe rules for the orderly conduct of its own business, a different question arises when they are called upon to apply the *statute of set-off*." In Gridley *a.* Garrison (4 *Paige*, 647), a bill was filed to set off judgments, the effect of which would have been to deprive the attorney of his lien. The bill, so far as it affected the attorney's lien, was dismissed with costs. The chancellor held that the attorney had an equitable lien for his costs, independent of, and long previous to the assignment of the judgment to him for costs by his client, in fact, from the commencement of the suit, which lien was paramount to any claim of set-off in another suit, and he refers to Dunkin *a.* Vandenburgh (*cited supra*).

But it seems to me that the question presented in this case is conclusively settled by the Court of Errors in Nicoll *a.* Nicoll (16 *Wend.*, 446). That case is in all respects like the present, being upon a bill filed in Chancery to set off a judgment previously recovered, against a subsequent one recovered for costs. The solicitor claimed his lien, and resisted the set-off. The Court of Errors distinctly overruled the case, before the Chancellor, of Dunkin *a.* Vandenburgh, and Gridley *a.* Garrison, and held that the set-off must prevail. The justice who delivered the opinion of the court says, "when we come to a bill filed on a trial at law, there is no discretion. On motion, the court proceed without the statute. On bill filed on a trial at law, they are within it, and must obey it. * * * No case can be produced where, on a bill filed, this lien has been let in to obstruct a set-off, until Gridley *a.* Garrison, decided by the present Chancellor (4 *Paige*, 647). *Equitas. sequitur legem*, whether the set-off be within the words or the spirit of the act. (Hyler *a.* Okey, 13 *Ves.*, 180.) The rules of practice are many times arbitrary, but when a statute comes in, there is a common principle by which all courts must abide."

This is the emphatic decision of the highest court in this State, exactly in

Messrs. Sherwood, asking that the insolvent discharge be declared void upon grounds which are stated in the opinion of BRADY, J., and that the judgment which he held against Cook should be set off against the judgment recovered by Cook, and which had been assigned to the defendants Sherwood.

I. *April,* 1858.—Trial by the court. The cause was tried at special term, and the following opinion rendered :

BRADY, J.—The Code (§ 303) repeals all existing laws restricting or controlling the right of a party to agree with an attorney, solicitor, or counsel for his compensation, and hence it follows that though prior to the enactment referred to, an agreement with an attorney to give him part of a debt for collecting it was void (Satterlee *a.* Frazer, 2 *Sandf. S. R.,* 141, and cases cited), it is not so now. In the language of SANDFORD, J., in the case just mentioned, the Code of Procedure appears to have changed the law in this respect, and to enable parties to make such bargains as they please with their attorneys. (See also Easton *a.* Smith, 1 *E. D. Smith's R.,* 318.) It is true that at the time the agreement was made by the Sherwoods with Cook, no costs had accrued, and that from the nature of the action brought against the latter, costs might not have been granted had he succeeded, but that did not affect the right of Cook to bargain upon the hypothesis that he might recover costs. That doubt was a matter affecting only the employer and the employed, which third persons have no power to interfere with. Having the right to make the agreement, and the agreement not being against the policy of the law, it was binding upon the parties, and must be sustained. From the moment the Sher-

point. It is the law of the State, and by which all courts must abide until changed by legislative enactments, or questioned or overruled by that court. I do not find that its authority has been weakened by any subsequent decision of that court.

This authority does not seem to have been adverted to in Ainslie *a.* Boynton (2 *Barb. S. C. R.,* 268), where a contrary ruling would seem to have been made.

I must, therefore, hold, in conformity with the decision of the Court of Errors, that the plaintiff is entitled to have the judgment, held by him against the defendants, set off against the judgment of the defendants against him.

Judgment for the plaintiff accordingly, with costs.

woods began to defend the action against Cook, an equity in their favor commenced, and so continued down to the time when the costs were adjusted. They labored for those costs, and having succeeded in the defence, it must be assumed that they earned them by diligence, industry, and skill. They took the risk in reference to the costs, and having done so, the costs never in fact belonged to the defendant in the action. Prior to the Code of Procedure the courts would not refuse to set off one judgment against another because of the attorney's lien, and upon the ground that the equities of the parties were superior to those of the attorneys, the attorney looking in the first instance to the personal security of his client. (The People *ex rel.* Manning *a.* The New York Common Pleas, 13 *Wend.*, 649; Nicoll *a.* Nicoll, 16 *Ib.*, 446.) And without reference to the question whether the attorney's lien still exists, although it seems to be settled. (Ward *a.* Woodsworth, 1 *E. D. Smith's R.*, 598; 12 *How. Pr. R.*, 136; 11 *Ib.*, 100; 20 *Barb.*, 541; 21 *Ib.*, 17; 4 *Ib.*, 47.)

There is little doubt that the principle upon which courts heretofore permitted judgments to be set off must still prevail, even if the lien is held to continue. But in this case something more than a mere lien exists as already stated. The costs that might be awarded were passed to the Sherwoods in anticipation of their recovery, as a compensation for their services which would result in that recovery; and as each particular service for which costs were allowed was performed, the right of the Sherwoods to the compensation for that service attached, not by lien alone, but by express agreement. Cook said at or about the time that the agreement was made that he had no means to carry on the suit; that he had failed, made an assignment, and had gone through the insolvent act. It would seem from these circumstances that the Sherwoods looked first to the costs for security, and not to the personal responsibility of Cook who had declared himself to be irresponsible, and it follows that so far as the cases (*supra*) are founded upon the theory, that the attorney relies first upon his client for payment, they have no application to this case. For these reasons I think the defendants Sherwood entitled to judgment. The plaintiff is, however, entitled to judgment against the defendant Cook. The discharge granted by Recorder Talmadge is only *prima facie* evidence of the

jurisdictional facts recited, and those facts may be inquired into by a party seeking to impeach the final order in a collateral action. If a defect is ascertained, the whole proceeding is void. (Stanton *a.* Ellis, 2 *Kern.*, 575.) In applications by an insolvent and his creditors, under the third article of the title of the Revised Statutes relating to non-resident, absconding, insolvent, and imprisoned debtors (2 *Rev. Stats.*, 16), the debtor is required to annex an affidavit to his petition, account, and inventory, in the form prescribed by the statute, which shall be subscribed by the insolvent, and sworn to in the presence of the officer to whom the petition is presented; and the officer receiving such petition, schedule, and affidavit shall make an order requiring all the creditors of the insolvent to appear. The affidavit is a prerequisite, and unless made in the manner and at the time prescribed, the officer acquires no jurisdiction. The affidavit relates to the inventory of the debtor's estate among other things, and to the whole of which estate the creditors are entitled as it exists at the time the petition is presented. But were it otherwise, it is sufficient that the statute requires the affidavit to be made before the order to show cause is granted, and in the presence of the officer granting the order. The proof shows that the affidavit referred to was sworn to before a commissioner of deeds in the first instance. That on or after the day on which the order to show cause granted by the recorder was returnable, the *jurat* to the affidavit was signed by him; and that although signed by him, it was neither subscribed nor sworn to by the insolvent in the presence of the recorder. It is clear, therefore, that the recorder never acquired jurisdiction, and that the whole proceeding before him is void.

There may be some question as to the sufficiency of the statement upon which the plaintiff obtained judgment against Cook, so far as the right of other creditors of the latter may be affected, but as between the plaintiff and Cook it is valid. (Griffin *a.* Mitchell, 2 *Cow.*, 548; Van Keller *a.* Muller, 3 *Abbotts' Pr. R.*, 375.)

Ordered accordingly.

II. *June*, 1859.—Appeal from the judgment.

The plaintiff appealed from that part of the judgment which

was in favor of the defendants Sherwood, dismissing the complaint as to them. The defendant Cook appealed from that part of the judgment which was in favor of the plaintiff against the defendant, declaring the discharge void.

*C. Bainbridge Smith*, for the plaintiff.

*H. A. Cram*, for the defendants.

By the Court.—Daly, F. J.—All the defendants in this case were entitled to judgment. The equitable relief which the plaintiff asked was this: That the discharge granted to the defendant Cook, as an insolvent, should be declared void; that the judgment which he, the plaintiff, had obtained against Cook by confession, should be set off against the judgment recovered by Cook against the plaintiff to the extent of the latter judgment; that the latter judgment should be adjudged to be satisfied and cancelled of record, and that the plaintiff should have judgment for what would remain due upon the former judgment, after allowing the set-off. Two things were sought to be accomplished by the action: first, to get rid of the discharge which stood in the way of the plaintiff's judgment; and then to have the set-off allowed.

The judgment which Cook recovered against the plaintiff was exclusively for Cook. The action was brought by the plaintiff against Cook and others, to set aside an assignment which Cook had made for the benefit of creditors, and the plaintiff having failed in the action, Cook, as one of the defendants, recovered judgment against him for $382.42 costs. Upon the trial in this suit, it was proved that after the commencement of that action, and before an answer was put in, an arrangement was made between Cook and his attorneys, the Messrs. Sherwood, to the effect that the costs of the defence of the action should belong to the attorneys. Mr. John Sherwood swore that Cook came to them, the attorneys, and told them that he had no means to carry on the suit; that he had failed, made an assignment, and had gone through the two-thirds act; that the witness told him that he would succeed in the action, that the suit was frivolous, the complaint would be dismissed; that they would go on and defend the action, and that they would get a bill of costs out of the plaintiff for their services, which would belong to them, the at-

torneys; and that Cook said, "Certainly, that's all right," or other words expressing assent to the agreement or arrangement. The attorneys went on, paid all the disbursements, and defended the suit, which was a protracted litigation, having been carried by the plaintiff to the Court of Appeals; and when judgment was rendered in Cook's favor for the costs above stated, he assigned the judgment to them.

The judge below found that, after the commencement of the suit and before the trial, an arrangement and agreement was made between Cook and the Messrs. Sherwood that the costs to be recovered were to belong to them; and I think that he was warranted by the facts in so finding. This agreement was made before the defence of the suit was undertaken by the defendants Sherwood, and the service which they agreed to render and did render was a good consideration for the making of such an agreement. The question of an attorney's lien, so much discussed in the various stages of this case, does not, in fact, arise. By the long-established practice of the courts, the attorney has a lien upon the judgment for his costs, subject, however, to the equitable right of the parties to set off one claim against another; and if the parties settle in fraud of the attorney's lien, the judgment will be enforced to the extent of the lien. But the defendants Sherwood did not call upon the court to protect a lien which they had upon the judgment for costs, or interpose any such lien, as against the plaintiff's right of set-off. They are the assignees and owners of the judgment, which has been assigned to them by Cook in consummation of an agreement which he made with them, when they undertook the defence of the suit, that the costs should belong to them. Their right is founded, primarily, upon a transfer or equitable assignment by Cook to them of a thing in expectancy, which was valid, and will be sustained by the court. "Whatever doubts may have existed heretofore," says WELLS, J., in Field a. The Mayor, &c., of New York (2 Seld., 187), "the better opinion now is, that courts of equity will support assignments, not only of things in action, but of contingent interests and expectations, and of things which have no present actual existence, but rest in possibility, provided the agreements are fairly entered into, and it would not be against public policy to uphold them." Before these costs were created, and before it could be known that Cook would ever be entitled to any;

when the matter rested in mere expectation and possibility, they made this agreement, that they were to have the costs for their services as attorneys; and if any doubt existed before the Code as to the right of an attorney to make such an agreement, none can exist now—the Code having repealed all laws restricting or controlling the right of a party to agree with his attorney for his compensation. They gave their services and paid the disbursements in the long course of the litigation. Their expectation was realized; the plaintiff failed in his suit, and when a judgment was rendered in Cook's favor for costs against the plaintiff, as the costs, by the previous agreement, belonged to the Sherwoods, Cook assigned the judgment to them. The defendants Sherwood, therefore, cannot be regarded as assignees taking subject to the plaintiff's right of set-off, but as assignees of a judgment nominally in the name of Cook, but the whole interest in which belonged to them when the judgment was rendered. This case, consequently, is distinguishable from The People *a.* Manning (13 *Wend.*, 649), which was also a judgment for costs assigned to the attorney, for there no such prior agreement existed; in addition to which, that case is of no authority, as it was subsequently reversed. And the case before us is equally distinguishable from Nicoll *a.* Nicoll (16 *Wend.*, 446), in which the attorney, relying simply upon his lien upon the judgment for his costs, was not allowed to interpose it against the appellant's statutory right to his set-off.

The defendants Sherwood, then, being the parties who had the sole interest in this judgment when it was rendered, through their previous agreement with Cook, the plaintiff had no claim to set off his judgment against it; and, having failed in this, I do not see that he could be entitled to any judgment. I know of no authority entitling him to maintain an equitable action to have Cook's discharge as an insolvent declared null and void, unless that discharge was an obstacle to the attainment of some right to which the plaintiff was entitled. If the judgment recovered in Cook's name for costs belonged to him, and the plaintiff would have an equitable right to set off against it his judgment against Cook, if that judgment was not affected by the discharge granted to Cook, upon the ground that the discharge was null and void, then the validity of the discharge would be connected with the equitable remedy of the right of set-off. But

having no right of set-off, the validity or invalidity of the discharge becomes immaterial; or if this was an action upon the judgment, the invalidity of the discharge would be material, for, if valid, he could maintain no such action; but it is not an action upon the judgment, but an equitable action to compel a set-off, which, if allowed, is to be followed by a judgment for the balance due, after allowing the set-off. If the set-off is not allowed, then the action fails; for what was asked, in addition, was dependent and contingent upon the granting of the set-off; or, if he sought to set the discharge aside upon the ground of fraud, the case might be different; but the objection to the discharge is, that the judge who granted it never acquired any jurisdiction, and, as that appeared upon the face of the record, the discharge interposed no obstacle to the plaintiff enforcing his judgment. If he brought an action upon the judgment, or issued an execution upon it and levied it upon the property of Cook, the discharge would be unavailable to Cook. An exhibition of the record upon which it was founded, would show it to be worthless. There was no ground, therefore, for invoking the equitable aid of the court. The plaintiff had an ample remedy, or, rather, was not in want of any equitable remedy, and judgment should have been given for all the defendants.

This view of the case dispenses with the necessity of considering the question raised, as to the sufficiency of the statement upon which the judgment was entered by confession. But I agree that the statement did not come up to the requirement of the statute; and I agree, also, that even if the answer could be regarded as admitting the existence of a valid judgment, that the plaintiff, having shown the fact to be otherwise, is bound by it. If the defendant means to rely upon any fact as a defence, he must set it up in his answer, that the plaintiff may be duly notified, and come prepared to meet it; but if the fact is shown by the plaintiff himself, this reason does not apply, and it does not lie with him to object, after he has shown the court that he has no cause of action. The rule upon this subject is stated by the Master of the Rolls, Sir John Leach, in Stanley *a.* Robinson (2 *Mylne & Craig*, 527): "The distinction is this: a defendant is not permitted to avail himself of a defence which appears only upon his evidence, and was not stated in his answer, so that the plaintiff could be prepared to repel it. But if it appears upon

the plaintiff's own case that he is not entitled to the relief prayed, the court will not assist him."

But I do not agree that Cook could avail himself of the insufficiency of the·statement. It was an objection available to Cook's creditors, or to a subsequent purchaser; but as against Cook, the party who swore to the statement with the design and object that a judgment upon his confession should be entered in favor of the plaintiff, the judgment is conclusive and valid. (Beekman *a.* Kirk, 15 *How. Pr. R.*, 231; Griffen *a.* Mitchell, 2 *Cow.*, 548; Moody *a.* Townsend, 3 *Abbott's Pr. R.*, 375, *note* of the case upon appeal; Nusebaum *a.* Kein, 7 *Abbott's Pr. R.*, 23; Kendall *a.* Hodgins, *Ib.*, 309; Chappell *a.* Chappell, 2 *Kern.*, 215; Dunham *a.* Waterman, 17 *N. Y. R.*, 9.)

HILTON, J.—I think the judgment in this case, so far as it relates to the defendants Sherwood is right, and should be affirmed; although I do not assent to the conclusion arrived at by Judge Brady in respect to the validity of the plaintiff's judgment.

It may be that its validity was not denied by the defendants in their answers; but the plaintiff did not choose to rest his case upon the admission which he now insists the answers contain.

The judgment under which he claims, was entered by the clerk of the Supreme Court upon the confession of the defendant Cook, and the record containing this confession was produced and read in evidence at the trial, on the part of the plaintiff, notwithstanding the defendants' objection, and their exception to its admission. It thus became evidence in the cause, and the court was therefore bound to respect it, to determine as to its validity as a record, and as to whether the statement or confession contained in it, was sufficient in law to warrant the clerk in entering the judgment upon which the plaintiff's right of action depended; because if it was not sufficient, and did not show a concise statement of the facts out of which the indebtedness alleged in it arose (*Code*, § 383), it followed that the judgment was entered by the clerk without legal authority, was not merely irregular, but void (Chappell *a.* Chappell, 2 *Kern.*, 215; Van Beck *a.* Sherman, 13 *How. Pr. R.*, 472; Bonnell *a.* Henry, *Ib.*, 144), and could, therefore, form no ground for the plaintiff's recovery. The first item of indebtedness men-

Ely *a.* Cook.

· tioned in the statement is the sum of $1500, for cash borrowed by the defendant Cook of the plaintiff, *from time to time*, and for which he holds the defendant's note, dated November 12, 1850, payable six months after date.

This was clearly insufficient. It should have specified the several amounts which went to make up the indebtedness, and the different times when the money was loaned. This was so held in Stebbins *a.* The East Society of the Methodist Episcopal Church, Rochester (12 *How. Pr. R.*, 410).

The second item of indebtedness alleged is still less explicit. It is, that the plaintiff had assumed for the defendant Cook the payment of $2000, for which he had given the plaintiff two notes for $1000 each, made payable at sixty and ninety days.

This is certainly not " a concise statement of the facts out of which the indebtedness arose." The nature and origin of the indebtedness assumed, to whom it was owing, and in what manner it was assumed by the plaintiff should have been stated. All this the law required, and as the statement did not furnish such information, it was not such a one as authorized the entry of a judgment upon it.*

---

* RAE *a.* LAWSER (*Supreme Court, First District ; Special Term, October*, 1859).—This was a motion made by S. F. Righter, a subsequent judgment-creditor of Lawser, to vacate a judgment confessed by Lawser to Rae.

SUTHERLAND, J.—Upon the question of fact referred to the referee to take proofs upon, whether the sum of $700, or any other sum was paid by Lawser upon the notes, to secure Rae's liability upon which the judgment was in part confessed, it is probable, on the proofs before him, the referee came to a correct conclusion, that as between Rae and Lawser, the parties to the judgment sought to be set aside, the $700 paid by Lawser to Rae was not a loan, but, in fact, a payment on account of the notes, and operated as a payment of so much of the judgment.

But Rogers took the assignment of the judgment from Rae, and paid him $1250 for it, in good faith, without notice of such $700 payment, or any other payment on the judgment, supposing no part of it had been paid ; and before he took the assignment and paid his money, Rogers called upon Lawser, told him Rae was desirous of selling the judgment to him, asked Lawser if it was all right, and whether any part of the same had been paid ; and Lawser in reply stated that the judgment was all right, that no part of it had been paid, and that the whole amount thereof was due.

These facts are not disputed, and there is no doubt that Rogers bought the judgment, and took the assignment and paid $1250, relying on such statements of Lawser.

Lawser could not, as against Rogers, set up the payment of the $700, as a payment and discharge of so much of the judgment ; nor do I think that he could

For these reasons I think the judge at special term erred in finding as a conclusion of law that the plaintiff's judgment was good and valid. He should have found it to be the reverse; and the argument that its validity can only be questioned by a former judgment-creditor, seems to me inapplicable to a case like the present.

The plaintiff sought in this action to enforce what he claimed to be a legal right acquired under a judgment entered upon the confession of the defendant Cook. If he recover, it must be upon the strength of his own case, and the evidence he has adduced in support of .it, and not upon the weakness of his adversary. He attempted to show that he was the owner of a valid judgment, which he was entitled to set off against a judgment actually belonging to the defendants Sherwood. Failing to show this, it follows that he has no cause of action, and, therefore, is not entitled to the relief he has demanded.

The defendants did not come into court asking to have his judgment vacated or declared void, they simply relied upon the inherent weakness of his claim, and asked that his action be dismissed, because he failed to show himself entitled to any relief whatever.

This, in my opinion, they had a right to do.

---

enable Righter to attack the judgment, in the hands of Rogers, on account of such payment, by confessing a judgment to him, Righter.

This motion then must be decided irrespective of the question of fact so referred to the referee, and of the proofs and the opinion of the referee thereon.

The statement on which the judgment was confessed to Rae is clearly sufficient, except as to the last note mentioned, dated March 28, 1855, and the $238.69 for moneys. paid by Rae for Lawser, and the $103.39 for goods sold and delivered by Rae to Lawser. As to these items, under the decisions, which are certainly conflicting, I should think the statement insufficient and defective. The amount for which the note was given is not stated, and the time or times when the goods were sold and delivered, and the moneys paid is not stated. Nor is it stated to whom the moneys were paid.

But the statement on which the judgment was confessed by Lawser to Righter is equally, if not more defective. In setting out the consideration of the notes, the time or times when the moneys were loaned, and the goods, &c., sold, is not stated. (Feligh *a.* Brink, 16 *How. Pr. R.*, 273 ; Chappell *a.* Chappell, 2 *Kern.*, 215 ; Dunham *a.* Waterman, 17 *N. Y. R.*, 9.)

The statement on which Righter's judgment was entered being defective, he cannot avail himself by this motion of the defects in the statement on which the judgment to Rae was confessed.

The motion of Righter must be denied, with $10 costs.

Upon these views the plaintiff was not a judgment-creditor of the defendant Cook, and therefore was not entitled to have the court declare his insolvent discharge, void. In my opinion the judgment at special term improperly passed upon that question, and this judgment given in respect to it should be reversed.

Judgment in favor of the defendants Sherwood affirmed, with costs. Judgment in favor of the plaintiff against the defendant Cook reversed, without costs.

---

## SPENCER *a.* CUYLER.

*Supreme Court, Seventh District; General Term, March,* 1859.

SUPPLEMENTARY PROCEEDINGS.—RETURN OF EXECUTION.

Where the sheriff makes return of an execution before the expiration of the sixty days, at the request of the plaintiff or his attorney, such return is to be regarded as the act of the party, and not the official act of the sheriff, and supplementary proceedings founded upon such a return will be set aside on application of the judgment-debtor.[*]

Appeal from an order denying the defendant's motion to vacate an order requiring him to submit to an examination supplementary to judgment.

The ground of the motion was, that the execution which had been issued by the plaintiff was accompanied with a request to the deputy who received it, to return it immediately unsatisfied, and that the return made, was so made in pursuance of this request. The motion was denied at special term; and the defendant appealed.

---

[*] To the same effect is Nagle *a.* James (*N. Y. Superior Ct.*, 1858), 7 *Ante*, 234; and Pudney *a.* Griffiths (*Supreme Ct.*, *First Dist.; Special Term*, 1858), 6 *Ante*, 211. But where the return is made by the sheriff of his own motion, in less than the sixty days, supplementary proceedings may be forthwith taken. Utica City Bank *a.* Buell, *Post*, 385.