GEORGE E. GOODRICH, as Administrator, etc., Respondent, *v.* MARTHA MCDONALD, Impleaded, etc., Appellant.

The provision of the Code of Civil Procedure (§ 66) as amended in 1879 (Chap. 542, Laws of 1879), giving to an attorney who appears for a party a lien upon his client's cause of action, which attaches " to a verdict, report, decision or judgment in his client's favor and the proceeds thereof in whosoever hands they may come," was prospective only in its operation, and has no effect upon a judgment previously recovered.

Prior to such amendment the attorney's lien was simply upon the judgment and enforceable through the control the courts have of their judgments and records, and by means of their own process. After the money had been paid, with his consent, to his client the attorney had no lien upon it or upon property thereafter purchased with that money and transferred to another.

*Goodrich* v. *McDonald* (41 Hun, 235) reversed.

(Argued December 12, 1888; decided January 15, 1889.)

APPEAL by defendant McDonald from judgment of the General Term of the Supreme Court in the fourth judicial department, entered upon an order made July 1, 1886, which affirmed a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term. (Reported below, 41 Hun, 235.)

About the year 1870, Mrs. Jennie L. Graves, a daughter of the defendant Mrs. McDonald, employed Milo Goodrich, the plaintiff's intestate, as her attorney to prosecute an action in her favor as administratrix of her deceased husband's estate, against William T. Porter and others who resided in the state of Delaware. The action was commenced in the Supreme Court of this state, but was removed by the defendants into the United States Circuit Court, where it was twice tried before a jury, resulting each time in a verdict in favor of the plaintiff for the full amount claimed. After the last trial an appeal was taken by the defendants to the United States Supreme Court, and while the case was pending there, in 1881, Mr. Goodrich died. Soon after his death Mrs. Graves employed Mr. Kernan to argue the appeal and the judgment was affirmed.

When the judgment was about to be paid to Mr. Kernan in January, 1882, he wrote to Mrs. Graves and also to the plaintiff, who was then administrator of his father's estate, suggesting that they both come to Utica, the place of his residence, and receive the money. Thereupon the plaintiff wrote a letter to Mr. Kernan in which he stated : " While my father's estate is interested in the judgment I am willing to look to Mrs. Graves alone for the share of the judgment coming to us, and she may, therefore, discharge the judgment and receive all proceeds, after settling with you, so far as the claims of the estate are concerned." He, also, on the same day, wrote to Mrs. Graves saying to her that he had written to Mr. Kernan informing him that he was willing to allow her to receive the money and discharge the judgment and that his father's estate would look to her alone for the amount coming to him as administrator. Thereafter, in January, 1882, Mrs. Graves went to Utica at the time appointed by Mr. Kernan, where she received from him, after deducting the amount of his compensation for services rendered in the case, $11,502.41, and she discharged and satisfied the judgment. On or about the first day of March, thereafter, she purchased a bond and mortgage for $6,000, and took an assignment thereof to herself, and on the first day of May following she assigned and transferred the same to the defendant Mrs. McDonald. The consideration of the assignment to Mrs. McDonald has the following history, as found by the trial judge : " Prior to the commencement of the action by Mrs. Graves against Porter and others, she being destitute of means or credit with which to pay the costs, expenses and disbursements necessary to be advanced and incurred in said litigation, or to support herself and family and educate her children during said litigation, made an agreement with her mother, the defendant Martha McDonald, to the effect that in case the latter would advance and furnish the moneys necessary for that purpose, if the suit was finally successful and a recovery was had therein, then she would pay over to her mother, the said McDonald, one-half of said recovery ; that the said McDonald agreed so to do, and per-

formed her agreement to that effect by supporting the said
Jennie L. Graves and her two daughters and furnishing
them board and clothing and educating said daughters, or
defraying the expenses thereof, and also by advancing to the
said Jennie L. Graves the necessary moneys to defray the
expenses and disbursements incident to the prosecution of said
action against said Porter and others mentioned in said com-
plaint during the pendency of the same," and the bond and
mortgage were assigned to discharge Mrs. Graves' obligations
under that agreement.

Soon thereafter the plaintiff demanded payment of Mrs.
Graves for the services of his father in the suit against Porter
and others, and payment being refused he commenced an action
against her to recover the amount and to establish a lien upon
the funds in her hands ; and, in that action, it was adjudged
that she was indebted to him as administrator for the pro-
fessional services of his father in the sum of $1,600 ; that he
and his father had a lien upon the judgment rendered in the
action against Porter and others for the services so performed ;
that payment of the judgment to her did not constitute a
waiver or release of the lien ; that the plaintiff had an equita-
ble lien upon the proceeds of the judgment so paid to her and
then in her hands or under her control ; and she was directed
to pay to the plaintiff out of such proceeds the sum of $1,600
and interest thereon.    In October, 1884, the plaintiff not being
able to realize anything in that action for the reason that Mrs.
Graves had disposed of all the money received by her upon the
judgment against Porter and others, before the trial and judg-
ment in that action, commenced this action against Mrs. Graves
and Mrs. McDonald for the purposes of establishing a lien
upon the bond and mortgage assigned to the latter as above
stated.    The trial judge found that he had such a lien
and was entitled to enforce it, and ordered judgment to that
effect in favor of the plaintiff.

*Matthew Hale* for appellant.    Where an attorney fails to
arrest the payment of a judgment by the defendant therein

to the plaintiff, by a notice given before the payment has been made, his lien, if he had any, is lost, and when the judgment has been so paid by the defendant in the judgment to the plaintiff, the attorney cannot follow the money into his clients hands and there enforce a lien upon it, or sue him as for a conversion of the moneys. (*Wehle* v. *Conner*, 83 N. Y. 232, 237, 238; *Marshall* v. *Meech*, 51 id. 140; *Martin* v. *Hawkes*, 15 Johns. 405; *Wright* v. *Wright*, 70 N. Y. 98; *Crotty* v. *MacKenzie*, 52 How. 54; *Braden* v. *Ward*, 42 N. J. [Law], 318, 322; *St. John* v. *Diefendorf*, 12 Wend. 261; *Benedict.* v. *Harlow*, 5 How. 347; *Nichols* v. *Pool*, 89 Ill. 491, 494; *In re Knapp*, 85 N. Y. 293, 294; *Welsh* v. *Hole*, 1 Doug. 238; *Dubois' Appeal*, 38 Penn. St. 231, 334; *McCaffrey* v. *Wooden*, 62 Barb. 316; *McFarland* v. *Wheeler*, 26 Wend. 467; 85 N. Y. 293; *Barker* v. *St. Quinton*, 12 Mees. & Wels. 449; *Mercer* v. *Graves*, L. R., 7 Q. B. 499, 503; *S. C.*, 41 L. J. [Q. B.] 212; *Hough* v. *Edwards*, 1 H. & N. 171; *Patrick* v. *Metcalf*, 37 N. Y. 332; *Coughlin* v. *N. Y. C. & H. R. R. R. Co.*, 71 id. 443, 449; Code of Civ. Pro. § 488, subd. 8; *Tooker* v. *Arnoux*, 76 N. Y. 397.) A mechanic's or attorney's lien is lost when the lienor consents that the property on which he has a lien may go into the possession of the general owner, and that, too, even if done by mistake. (3 Wait's Prac. 542; *Sweet* v. *Pym*, 1 East, 4; *McFarland* v. *Wheeler*, 26 Wend. 467; *Bigelow* v. *Heaton*, 4 Denio, 496; *Dicas* v. *Stockley*, 7 C. & P. 587; *Perkins* v. *Boardman*, 14 Gray, 481; *Walker* v. *Staples*, 5 Allen, 34; *Sears* v. *Wills*, 4 id. 212; *Cowen* v. *Boone*, 48 Iowa, 350; *Nichols* v. *Pool*, 89 Ill. 491, 494; *G., etc., R. R. Co.* v. *Sage*, 35 Hun, 95; *Benedict* v. *Harlow*, 5 How. 347.) The judgment recovered by plaintiff against Mrs. Graves created no lien upon the money or mortgage in question, against either the estate of Cyrus S. Graves or the defendant McDonald. (*Rathbone* v. *Hooney*, 58 N. Y. 463, 467; *Fisher* v. *Hubbell*, 65 Barb. 74; *Van Cott* v. *Prentice*, 104 N. Y. 39, 57; *Bigelow* v. *Heaton*, 4 Denio, 496, 498; *McFarland* v. *Wheeler*, 26 Wend. 467; *Sears* v. *Wills*, 4 Allen, 212; *Dicas* v. *Stockley*, 7 C. & P. 587; *Sweet* v. *Pym*, 1 East,

4; *Cowen* v. *Boone*, 48 Iowa, 450; *Riley* v. *Mayor, etc.*, 96 N. Y. 331–339; *Barker* v. *St. Quinton*, 12 Mees. & Wels. 440, 449; *Lawrence* v. *Townsend*, 88 N. Y. 25, 32; *Hough* v. *Edwards*, 1 H. & N. 171, 173; *Mercer* v. *Graves*, L. R., 7 Q. B. 499, 503, 505; *Dubois' Appeal*, 3 Penn. St. 231; *Horton* v. *Champlin*, 12 R. I. 550, 551, 552, 559, 560; 1 Jones on Liens, § 157; *Whittle* v. *Newman*, 34 Ga. 577; *Marshall* v. *Meech*, 51 N. Y. 140; *Wehle* v. *Conner*, 83 id. 238.) The attorney's lien is, in short, only a right to prevent the client from getting possession of the fund to the prejudice of the attorney. (*Barker* v. *St. Quinton*, 12 Mees. & Wels. 440, 449; *Hough* v. *Edwards*, 1 H. & N. 171, 173; *Dubois' Appeal*, 38 Penn. St. 231, 234; *Mercer* v. *Graves*, L. R., 7 Q. B. 499, 503; *Horton* v. *Champlin*, 12 R. I. 550.) In this case when the plaintiff wrote Mr. Kernan that he might pay over the entire proceeds to Mrs. Graves, and that his father's estate would look to Mrs. Graves alone for payment, he waived the lien upon the judgment, and, upon the payment of the money by Mr. Kernan to Mrs. Graves, with plaintiff's consent, the lien ended. (*Cowen* v. *Boone*, 48 Iowa, 350; *Whittle* v. *Newman*, 44 Ga. 377.)

*H. V. Howland* for respondent. The plaintiff has an equitable lien for the services of Milo Goodrich upon the fund of $12,000, recovered through his efforts in whosoever hands they may come. (*Jenkins* v. *Adams*, 11 N. Y. W. Dig. 330, 31 Alb. L. J. 304; *Rooney* v. *Second Ave. R. R. Co.*, 18 N. Y. 368; *Ely* v. *Cook*, 28 id. 373; *Dunkin* v. *Vandenburgh*, 1 Paige, 626; *Marshall* v. *Meech*, 51 N. Y. 143; *Wright* v. *Wright*, 70 id. 100; *In re Knapp*, 85 id. 284.) Possession of the funds by the attorney is not necessary to uphold this class of liens. (*Read* v. *Dupper*, 6 T. R.; 2 McCarty, 157; 26 Alb. L. J. 271; 2 Story's Eq. Jur. § 1217; *Custer* v. *Greenpoint Ferry Co.*, 5 Civ. Pro., 146; 98 N. Y. 660.) The lien of the attorney for professional services does not attach in virtue of his possession of the fund or securities

or cause of action or the judgment, which he can release by allowing his client to handle them; but he is the equitable owner to the extent of his lien of the cause of action, judgment and the avails. (*In re Wilson* v. *Greig*, 2 McCarty's R. 151; 26 Alb. L. J. 271; 4 Wait's Actions, etc. 320; Code Civ. Pro. § 66.)    To entitle a purchaser to protection as against the legal title of a prior equity, he must purchase his title without notice of such prior equity and also for an adequate consideration actually paid. (*Weaver* v. *Barden*, 49 N. Y. 286; *Le Barron* v. *Samson*, 53 Hun, 286.)    The attorney's lien for his costs on a fund recovered by his exertions cannot be affected by an assignment to another. (*Haynes* v. *Cooper*, 33 Beav. 431; *Ward* v. *Craig*, 87 N. Y. 560; *Johnson* v. *Haynes*, 37 Hun, 303.)

EARL, J. The judgment in the action brought by Mrs. Graves against Porter and others, was perfected on the 26th day of June, 1877, about two years before the amendment of section 66 of the Code of Civil Procedure enlarging the scope of that section, so that now an attorney who appears for a party has a lien upon his client's cause of action, which attaches "to a verdict, report, decision or judgment in his client's favor and the proceeds thereof, in whosoever hands they may come." The section as amended was prospective only in its operation and can have no effect upon a judgment previously recovered; and so it was held by the trial judge. Therefore, in the examination of the case, it is not necessary to take further notice of the section. Nor is it necessary to give any attention to the adjudication in the former action by the plaintiff against Mrs. Graves, as that action was commenced after the assignment of the bond and mortgage to Mrs. McDonald, and she was not a party thereto, and, therefore, not bound by the adjudication therein.

Attorneys have two kinds of liens peculiar to them in their relations with their clients. One is a lien which an attorney has upon all the papers of his client in his possession, by virtue of which he may retain all such papers until his claim for

services has been discharged. That in the books is called a retaining lien. An attorney also has a lien upon the fund, or judgment which he has recovered for his compensation as attorney in recovering the fund or judgment, and that is denominated a charging lien. (Stokes on Liens of Attorneys, 5, 85; *In re Wilson*, 2 McCarthy Civ. Pro. 151.) It is the latter kind of lien with which we are concerned in this case.

The practice of enforcing such liens is not very ancient. Baron PARKE in *Parker* v. *St. Quinton* (12 Mees. & Wels. 451), stated that the doctrine of an attorney's lien on a judgment was first established in the case of *Welsh* v. *Hale* (1 Doug. 238), where Lord MANSFIELD said ; "An attorney has a lien on the money recovered by his client for his bill of costs. If the money come to his hands he may retain to the amount of his bill. He may stop it *in transitu* if he can lay hold of it. If he apply to the court they will prevent its being paid over till his demand is satisfied. I am inclined to go still further, and to hold that, if the attorney gave notice to the defendant not to pay till his bill should be discharged, a payment by the defendant after such notice would be in his own wrong, and like paying a debt which has been assigned after notice. But I think we cannot go beyond these limits." That great jurist in *Wilkens* v. *Carmichael* (1 Doug. 104), speaking of an attorney's lien also said : " It was established on general principles of justice, and that courts, both of law and equity, have now carried it so far that an attorney or soliciter may obtain an order to stop his client from receiving money recovered in a suit in which he has been employed for him until his bill is paid."

The lien, as thus established, is not strictly like any other lien known to the law, because it may exist although the attorney has not and cannot, in any proper sense, have possession of the judgment recovered. It is a peculiar lien, to be enforced by peculiar methods. It was a device invented by the courts for the protection of attorneys against the knavery of their clients, by disabling clients from receiving the fruits of recoveries without paying for the valuable services by which the recoveries were obtained. The lien was never enforced

like other liens. If the fund recovered was in possession or under the control of the court, it would not allow the client to obtain it until he had paid his attorney, and in administering the fund it would see that the attorney was protected. If the thing recovered was in a judgment, and notice of the attorney's claim had been given, the court would not allow the judgment to be paid to the prejudice of the attorney. If paid after such notice in disregard of his rights, the court would, upon motion, set aside a discharge of the judgment and allow the attorney to enforce the judgment by its process so far as was needful for his protection. But after a very careful search we have been unable to find any case where an attorney has been permitted to enforce his lien upon a judgment for his services by an equitable action, or where he has been permitted to follow the proceeds of a judgment after payment of them to his client. His lien is upon the judgment, and the courts will enforce that through the control it has of the judgment and its own records, and by means of its own process which may be employed to enforce the judgment. But after the money recovered has been paid to his client he has no lien upon that, and much less a lien upon property purchased with that money and transferred to another. After such payment, unless he has protected his lien by notice to the judgment-debtor, his lien is forever gone, and he must look to his client alone for his compensation. As said by Lord ELLENBOROUGH, in *Wilson* v. *Kymer* (1 Maule & Sel. 157), and repeated by Senator VER PLANCK, in *McFarland* v. *Wheeler* (26 Wend. 467), "in a case of a lien we should be anxious to tread cautiously and on sure grounds before we extend it beyond the limits of decided cases." There are not only no decided cases which sanction the maintenance of this action, but the drift of all the authorities is against the plaintiff's contention.

In *Cooper* v. *Jenkins* (33 Beavan, 431) the master of the rolls said: "I have always understood the law to be that a solicitor had an inherent equity to have his costs paid out of any fund recovered by his exertions; and that the court would not part with it until these costs had been paid, except by

consent of the solictor." In *Mercer* v. *Graves* (7 Q. B., L. R. 499), Lord Chief Justice COCKBURN said : " Although we talk of an attorney having a lien upon a judgment, it is in fact only a claim or right to ask for the intervention of the court for his protection, when, having obtained judgment for his client, he finds there is a probability of the client depriving him of his costs." In *Barker* v. *St. Quinton* (*supra*), Baron PARKE said : " The lien which an attorney is said to have on a judgment (which is perhaps an incorrect expression), is merely a claim to the equitable interference of the court to have that judgment held as a security for his debt." In *Barden* v. *Ward* (42 N. J. L. 518), it was held that the right of lien for an attorney's costs exists only where he has received money upon the judgment in the cause, or has arrested it in *transitu*, or where the defendant has paid the judgment after receiving notice of the attorney's claim. REED, J., writing the opinion in that case said : " There is no instance in the practice of the English courts where the right of lien for costs has been enforced, except where the attorney has possession of the money received upon the judgment, or has arrested it in *in transitu*, or else the defendant has received notice of the claim of the plaintiff's attorney before settling the judgment." In *Cowen* v. *Boone* (48 Iowa, 350), it was held that an attorney's lien upon a judgment is waived by his procuring a transfer to his client of land attached in the suit in satisfaction of the judgment. There the client having received the transfer of the land conveyed it to a third person and took back a mortgage for the purchase-money. She then assigned the mortgage and the attorneys, being defendants in a suit to foreclose it, asserted their lien ; and it was held that their lien was upon the judgment and did not follow the land when the title was perfected in the client. In *Whittle* v. *Newman* (44 Ga. 377), it was held that after the litigation was ended and the client had possessed himself of the entire fund recovered by the litigation, the court had no power to give relief to the attorney. In *Horton* v. *Champlain* (12 R. I. 550), it was held that an attorney's lien originates in the con-

trol which the attorney has in his retainer over the judgment, and the process for its enforcement, thus enabling him to collect the judgment and reimburse himself out of the proceeds. These authorities are all in harmony with the cases which have been decided in this state (*St. John* v. *Diefendorf*, 12 Wend. 261; *Marshall* v. *Meech*, 51 N. Y. 140; *In the Matter of Knapp*, 85 id. 284); and from them it appears to be clear that when by acquiescence of the attorney the money recovered has been paid to his client, or his client has received property in satisfaction of the judgment, he cannot enforce his lien against such money or property, but must look to his client alone for his compensation. Therefore, when this money, with the plaintiff's consent, was paid to Mrs. Graves, without any agreement that his lien should be transferred to the fund thus paid, or should follow it any further, the lien was lost, and his only remedy then was against her. Before the judgment was paid, the court, upon his application, would have protected his lien by compelling payment to him, or authorizing him to enforce the judgment for his own benefit, so far as it was necessary, to secure his compensation. If the defendants had paid the judgment without notice of the attorney's lien, they would have been protected and the attorney could not have enforced his lien upon the moneys paid. If, however, they had paid after receiving notice of the lien, or in fraud of the rights of the plaintiff, the court would have canceled any satisfaction of the judgment and allowed him to enforce it for his own benefit. Therefore, in no aspect of this case was the plaintiff in a position to enforce any lien upon this mortgage for the amount of compensation due for the legal services of his intestate.

But we need not stop here. If the plaintiff could otherwise have had an enforceable lien against the funds in Mrs. Graves' hands, or against the mortgage in the possession of Mrs. McDonald, the lien was lost by his consent that the money should be paid to Mrs. Graves. He not only consented that the money should be paid to her, but that he would look

to her alone for the amount coming to him.   This certainly was a distinct and emphatic waiver of any lien he had. He did not reserve any lien upon the fund, or any right to proceed against it.   We do not think that it is a reasonable construction of the letters written by him to Mr. Kernan and Mrs. Graves that he intended the fund should be paid to her subject to his lien, or that he intended in any way to preserve his lien.   After payment with his consent, his lien was effectually destroyed as the lien of a mechanic is who delivers to the general owner an article upon which he has performed labor without any agreement that his lien shall be preserved.

The confidence of the plaintiff in the client appears to have been misplaced and abused.   His claim is a very meritorious one, and we have been anxious to find some way to circumvent the efforts, apparently without justification, to defeat it. But we have been unable to find any, and reluctantly reach the conclusion that the judgment should be reversed and a new trial granted.

All concur.

Judgment reversed.