FRINK et al. v. McCOMB.

(Circuit Court, D. Delaware. March 5, 1894.)

1. ATTORNEY AND CLIENT—COMPENSATION—AMOUNT.

Counsel were retained to bring suit upon an important and doubtful claim, which had already been asserted in another jurisdiction without success. It was agreed that the client should furnish $2,000 for necessary costs and disbursements, and that counsel should look only to the amount recovered for compensation for their services, of which recovery they were to be permitted to retain "a liberal amount." The litigation, which was long and arduous, was in the end successful. All the counsel retained testified that one-third of the amount recovered was no more than a moderate compensation, and their testimony was not contradicted. *Held,* that they were entitled to a lien on the amount recovered to the extent of one-third thereof.

2. SAME—AGREEMENT—ABROGATION.

Pending the litigation, counsel wrote to their client that, inasmuch as a final settlement was likely to be long deferred, they thought it "no more than reasonable to ask for a payment on account of services;" but no payment was made, and the request was not insisted upon. *Held,* that no inference could arise from this that the agreement asserted by counsel had not been made.

3. SAME—LIEN—EFFECT OF ASSIGNMENT.

An assignment made by a client, pending litigation, of the amount to be recovered, cannot prejudice the lien of his attorney thereon for services; nor is it essential to the preservation of his rights that he should notify the assignee of his claim, especially when such assignee assents to the services rendered, and knows that the client is financially unable to pay the fees.

Wilson & Wallis, George Gray, and William C. Spruance, for complainants.

Henry Schmitt, for assignees.

DALLAS, Circuit Judge. This is a suit in equity in which an amended final decree was entered on the 7th of August, 1889, for the plaintiffs and against the defendant, for $91,420. During the same month both parties appealed, but neither appeal was sustained. On June 2, 1893, the mandate of the supreme court affirming the decree, and directing further proceedings in this court, was filed, and on the 6th of the same month, in pursuance of the praecipe of plaintiffs' counsel, a writ of fieri facias was issued. Thereupon the defendant, by her counsel, tendering herself ready and willing to pay whomsoever might be entitled, but informing the court that she, had been notified by Walkinshaw & Voigt (claiming to be assignees of the decree) to pay only to them, applied to be relieved from the hazard, by which she supposed herself to be confronted, of being required to make double satisfaction. This application was heard on July 15, 1893, the counsel of Walkinshaw & Voigt and the solicitors of the plaintiffs being then present in court. We then thought, as we still do, that the defendant might with entire safety have paid under the execution, and left the respective claimants to litigate their several claims to the fund after it had reached the marshal's hands; but, to release so much of the amount as was not in controversy, to expedite the determination of the only matter involved in dispute, and to relieve the defendant from any possible embarrassment, it was, with the acquiescence of all the counsel, ordered:

"(1) That $40,000 of the fund above referred to be forthwith paid into the registry of this court by the petitioner (the defendant), and that, after payment therefrom of the costs to this time, the balance of said $40,000 shall await distribution or payment over until the further order of the court; (2) that S. Rodmond Smith, Esquire, be, and is hereby, appointed examiner to take such evidence as may be adduced before him upon behalf of the parties claiming to be entitled to receive or to participate in the distribution of the money in the registry of the court, and to report said evidence, and the facts in his opinion shown thereby, to the court; (3) that the defendant pay the balance of debt, interest, and costs, over and above said sum of $40,000, upon receiving a satisfactory release therefor from the complainants, and also from those claiming to be entitled as assignees,—with leave to all parties to apply for further orders in the premises."

In accordance with this order, $40,000 was placed in the registry of the court, of which there still remains on deposit a balance of $39,373.25. The examiner, rightly conceiving the scope of his duties, has taken and filed all the evidence, and has confined his report thereon to a simple statement of the facts which, in his opinion, are shown thereby. Upon his findings, however, though evidently made with much care, we have not, in view of the exceptions filed, deemed it proper to rely, but have ourselves examined the evidence, and upon that examination, independently made, have reached the conclusions of fact embraced in this opinion. The present situation is substantially the same as if the money in question had been actually paid to the marshal, and had then, on motion of Walkinshaw & Voigt, been ordered to be paid into court, instead of to the solicitors

at ·whose instance the execution had been issued, in order that the disposition to be made of the fund might be considered and adjudged while it still remained under the control of the court. In other words, the case presented, and which has now been fully argued and considered, is simply this: Walkinshaw & Voigt, basing their assertion of right upon certain instruments of writing, ask that the entire sum made by the writ of fieri facias shall be awarded to them, notwithstanding the demand of the plaintiffs' solicitors that there shall be first deducted, and allowed to the latter, the amount which they allege to be due to them as compensation for their professional services, and for disbursements made by them in and about the prosecution of this cause, and in the production of the fund in controversy. This is the whole matter, and every point which is material to its decision may be conveniently treated with reference to two questions, viz.: (1) Would the plaintiffs' solicitors, if the money had come to their hands, have had the right to deduct and retain the amount claimed by them, as against the plaintiffs themselves? (2) If they would, then have Walkinshaw & Voigt established a title which operates to defeat that right of the solicitors?

1. The broad proposition primarily suggested by the first of these questions does not admit of contention. That counsel may rightfully withhold, in satisfaction of their proper charges, money of the client collected in the proceeding to which those charges pertain, is indubitable. In Read v. Dupper, 6 Term R. 361, this right was held to extend to a judgment recovered, though not collected, and was enforced against a defendant's attorney who, after notice from the plaintiff's attorney not to do so until the bill of the latter had been first satisfied, paid the debt and costs to the plaintiff himself. Lord Kenyon there said:

"The principle by which this application is to be decided was settled long ago, viz. that the party should not run away with the fruits of the cause without satsifying the legal demands of his attorney, by whose industry, and in many instances at whose expense, those fruits are obtained."

The principle thus enunciated has now been established for about a century longer than when Lord Kenyon referred to it as having been settled long ago, and is at this day so fully recognized as not to be open to question. The only difficulty upon this branch of the subject is as to the amount of the charge which counsel have made for their fees in this case. They demand one-third of the sum recovered, and in an ordinary case this would, beyond doubt, be excessive. But this is not an ordinary case. The plaintiffs have, from the commencement, been represented by three counsel (Wilson & Wallis being treated as one), and there is no ground to support the contention that so many counsel were not needed. The firm mentioned (as then constituted) was first employed. Its members advised that the others (Mr. Gray and Mr. Bayard, and subsequently Mr. Spruance, in substitution for Mr. Bayard) should be retained, and there is not the slightest reason to doubt the wisdom of this advice, or to suspect that it was not given in absolute good faith. At all events it was accepted, and the additional counsel gave their services to the plaintiffs with their full knowledge and approval.

There is no standard by which the compensation of counsel can be properly and definitely determined as to amount. The question, when presented at this time, must be decided upon considerations as vague and indefinite as when it was said in the Mirror (chapter 2, § 5) that "four things are to be regarded: (1) The greatness of the cause; (2) the pains of the serjeant; (3) his worth, as his learning, eloquence, and gift; (4) the usage of the court." With respect to the first three of these, several pertinent things may safely be affirmed with regard to this cause. It was an important and a doubtful one. The claim which it was instituted to recover had already been asserted in another jurisdiction without success. The plaintiffs were discouraged, and had but little hope of a favorable result. The suit was brought upon the advice of counsel, based upon their better apprehension that it might be maintained. They conducted it with care and skill, and secured a decree. In the brief submitted on behalf of Walkinshaw & Voigt, they are referred to, and we think with justice, as "eminent counsel," and two of them are well known to the court as lawyers of the highest standing,—one of them having been engaged in practice at this bar for nearly 40 years, and the other for at least 30 years. As to the importance of the cause, the worth of the counsel, and the ability and usefulness with which they have served their clients in this suit, nothing more need be said. We come now to the "usage of the court," and with reference to this we have already said that the amount charged is greater than, under ordinary circumstances, could be sanctioned. The justification of this charge, if it can be justified, must be found in the peculiar circumstances of this case. It is not practicable to discuss all the evidence submitted, and arguments advanced, in relation to the understanding between counsel and clients as to the compensation of the former. It must suffice to say that we have reached the conclusion that it was agreed that, beyond the sum of $2,000, which the clients undertook to provide, in any event, for payment of charges and expenses, including retaining fees amounting to $870, the plaintiffs were to pay nothing for services or for disbursements, except from and out of the sum (if any) realized from the litigation; and that, in consideration of counsel undertaking and prosecuting the case upon these terms, they would, if successful, be permitted to retain for their fees a liberal proportion of the sum recovered. It is insisted that a letter which was written by Messrs. Wilson & Wallis to Mr. Frink is inconsistent with this view of the understanding between them. That letter was written after decree in this court, and pending the appeal to the supreme court. It contains this statement: "We also think it not unreasonable, under the circumstances, to ask you for a payment, say $2,000, on account of our services in the litigation." This was not a demand made as of right, but a request submitted as "reasonable under the circumstances;" and the circumstances mentioned at the beginning of the same letter are that some years would probably elapse "before any of the fruits of that litigation can be gathered." A decree had been obtained, but the fund from which counsel were to be paid was not likely to be realized for some time, and so they said that they thought it

not unreasonable to ask for a payment "on account" at that stage. They had no right to insist upon this request, and they do not appear to have urged it any further. It was certainly not complied with. Nothing was paid in response to it, and the services of counsel were continued. We are satisfied that from beginning to end the case was conducted in reliance upon the arrangement we have stated, and which was originally made by Mr. Frink and Mr. Wilson, and was, through the latter, in pursuance of his authority to employ additional counsel, extended to Mr. Gray and to Mr. Spruance, who accepted their respective retainers subject thereto. The precise sum to be applied to the payment of counsel in case of success was not agreed upon, and if the court were called upon to fix what would be a proper amount, without the aid of more direct evidence, it would be compelled to do so with reference merely to this understanding of the parties and the other pertinent circumstances; but, fortunately, we are not required to determine the question upon so unsatisfactory a presentation of it. Four witnesses have been examined as experts on behalf of the solicitors, and they agree in their testimony. They are William G. Wilson, Hamilton Wallis, George Gray, and William C. Spruance. The testimony of the latter was, in part, as follows:

"In view of all the circumstances connected with this case, as testified to by me, and as disclosed by the printed records and briefs in this cause, the length of time engaged, the number and difficulty of the questions presented, the difficulty of obtaining the full facts of the case, and the fact that the compensation of counsel was agreed at the start that it should depend upon the result, I consider that a third would be a very moderate and reasonable compensation for their services, * * * one-third of the recovery and interest."

It appears from the examiner's notes that, after the proceedings before him had been closed for general purposes, an adjournment for several days was had, to afford opportunity for adducing evidence "as to the value of the services of counsel and solicitors for the complainants;" but, though this was followed by several meetings, not a witness was called on behalf of Walkinshaw & Voigt to testify as to the value of the services in question. In brief, the expert testimony is all in favor of the solicitors, and we see no reason for disregarding it. It does not appear to be unreasonable in itself. It is wholly uncontradicted, and the character of the witnesses is unimpeached. It is true that they are interested in the result, but this alone would not justify us in refusing them credit. They were peculiarly well informed with respect to the particular subject, and they are officers of this court, sworn, not only to testify truly, but also to the observance of all due fidelity, as well to the court as to the client, and nothing has been shown which would warrant the imputation that they have been unfaithful to these sacred obligations. We are of opinion that, upon the facts appearing in this case, the solicitors of the plaintiffs would, as against the latter, be entitled to retain one-third of the amount of the decree and interest, in payment for their services, and, in addition thereto, the amount of the disbursements properly made by them in the prosecution of this suit.

2. Assuming, then, that the charge made by these solicitors is a

reasonable and proper one, and that, as against the plaintiffs, they would have a right to insist upon its payment, as well as their disbursements, out of the fund in court, we pass now to the consideration of the claim of Walkinshaw & Voigt to the whole amount collected under the decree, without satisfying the legal demands of those by whose industry, and to a considerable extent at whose expense, that decree was obtained. This claim is founded upon three instruments of writing, all of which purport to have been made after the suit had been commenced, and which bear date, respectively, as of April 16, 1888, July 3, 1890, and November 8, 1890. It is not necessary to add to the length of this opinion by referring to these several writings in detail. It is sufficient to state that Walkinshaw & Voigt insist that they constitute a valid assignment of the decree in this case; and, though this is strenuously denied by the solicitors of the plaintiffs, we do not deem it requisite to pass upon the subject. The plaintiffs themselves seem to admit that a valid assignment was made, and, in view of the fact that our conclusion upon the only matter with which we are now concerned is not at all dependent upon the correctness of this admission, it is not desirable that we should question it at the instance of the solicitors. For the present purpose, therefore, let it be conceded that Walkinshaw & Voigt are the owners of the decree, but subject to the question as to whether their title is paramount to the right of the plaintiffs' solicitors to be paid, from its proceeds, their fees earned, and expenses incurred, in obtaining, maintaining, and collecting it. The many cases cited upon this point have been examined with attention and interest, but any extended review of them would be tedious and redundant. Taken together, they clearly establish that the right of counsel to which we have referred cannot be extinguished by assignment of the judgment or decree, made without their acquiescence. This rule is, in most of the cases, based upon the ground that an attorney has a lien upon a judgment recovered by him for his proper charges with respect to it, and in others an equitable assignment in his favor is asserted, while in some it is said that, in addition to, or independently of, either of these aspects of the subject, the court owes to its officers the duty of protecting them against deprivation of their just reward and needful outlays, by whomsoever attempted. But, upon whatever theory it should be rested, there is no doubt whatever that the rule exists, and that, as was said by Mr. Justice Bradley in Re Paschal, 10 Wall. 483, it prevails, generally, in this country. Railroad Co. v. Pettus, 113 U. S. 116, 5 Sup. Ct. 387; Claflin v. Bennett, 51 Fed. 694; affirmed in circuit court of appeals, sub nom. Blair v. Harrison, 6 C. C. A. 326, 57 Fed. 257. It is enforced in the state of New York, where the solicitors in this case were, in the first instance, employed. Rooney v. Railroad Co., 18 N. Y. 368; In re Knapp, 85 N. Y. 284; Goodrich v. McDonald, 112 N. Y. 157, 19 N. E. 649. The industry of counsel has failed to bring to light any judicial decision of the point in the state of Delaware; but we have convincing and uncontradicted testimony that the rule in question is recognized as existing by the bar of that state, and we are quite disposed to believe that, if asserted before its courts, it would be

maintained by them. It is, however, at least very doubtful whether the law of that state, even if certainly known, should be accepted as determinate of this matter, and certainly, in the absence of such knowledge, we must, so far as its law is concerned, be content to assume that it does not differ from that which generally prevails; and, according to this general rule, we are of opinion that the solicitors of the plaintiffs in this case have a lien on the fund recovered therein, and now in court, which lien has not been, and could not be, divested by the alleged assignments to Walkinshaw & Voigt, or by any of them. The instrument dated July 3, 1890, was filed in the office of the clerk of this court on September 3, 1890, after the final decree had been obtained and the appeal taken, and the one dated November 8, 1890, was, in like manner, filed on February 7, 1891; but we attach no importance to these acts. The solicitors of the plaintiffs were not informed and knew nothing of them at the time, nor until they were subsequently brought to their attention incidentally, and not by either the plaintiffs or their assignees. The only material fact in connection with the filing of these papers is that the solicitors did not, after they became aware of their existence, in any manner agree or admit that their lien was, or could be, affected by them. It is true that, while the appeal was pending, they acquired knowledge of one of these papers and its contents, but this cast no duty upon them. It was not incumbent upon them to notify their rights to Walkinshaw & Voigt, who already knew, of course, that counsel were giving, and had given, their services to the cause. Nor, if this had been otherwise, would such notice have advantaged the assignees, inasmuch as such title as they now have they had already accepted, and with or without special notice, subject to the vested rights of the solicitors? On the other hand, Walkinshaw & Voigt never at any time communicated with the counsel who had professional charge of the case in which they had, as they claim, become solely interested. The earliest document which they set up, though dated April 16, 1888, was never disclosed until it was produced before the examiner in this proceeding, on October 23, 1893; and counsel were allowed to labor in the cause from that time until the fruits of the litigation were attained, without any intimation of the present claimants' interest therein, other than such as might, perchance, be derived from an examination of the records of the court, after the decree had been obtained. Nothing has been done or omitted by these solicitors to forfeit or waive their right of priority, and nothing which the plaintiffs or their assignees have done can avail to defeat or evade it. Plaintiffs' solicitors may prepare, and, after five days' notice thereof to counsel for Walkinshaw & Voigt, shall submit to a judge of the court for settlement, a decree awarding and distributing the fund in court as follows: (1) To the payment of the costs of this proceeding; (2) to the counsel of the plaintiffs a sum equal to one-third of the amount of the decree and interest, as compensation for their services in this suit, and also such further sum as, after allowance of proper credits, will reimburse the expenses incurred and paid by them therein, exclusive, however, of any payments, other than for taxable costs, made in the present pro-

ceeding; (3) the balance to Walkinshaw & Voigt, as assignees of the decree.

(March 6, 1894.)

WALES, District Judge. I fully concur in the opinion of Judge DALLAS, and I will add only a word or two in relation to some of the evidence in the case.

1. As to the agreement for the compensation of the plaintiffs' solicitors. Mr. Frink denied the existence of any agreement on the subject, but his denial is overborne by the testimony of Mr. Wilson, and is inconsistent with his own subsequent admission that he had, at the outset, proposed to Wilson & Wallis that they should begin and carry on the suit at their own cost, and receive for their compensation 50 per cent. of whatever amount might be recovered. This proposition having been declined, the agreement, testified to by Mr. Wilson, that the estate of C. B. Snyder should advance $2,000 for costs and disbursements, and that the compensation of the solicitors should depend wholly on the successful result of the suit, naturally and reasonably followed. If the decree should be favorable, they were to have a liberal share of the proceeds; if unfavorable, they would receive nothing. In compliance with this arrangement, Mr. Frink did furnish a few hundred dollars, which were expended in retaining local counsel in Delaware, taking testimony, etc.; but he has not, up to this day, advanced more than $950, leaving his solicitors out of pocket for a considerable sum expended by them in and about the suit.

2. Mr. Frink's recollection is also at fault as to what occurred in the interview between him and Mr. Wilson after the discovery by the solicitors of the first assignment, of July 3, 1890. Mr. Wilson testified that Mr. Frink gave him the assurance that "we need not feel any concern about the assignment, because the persons who had it were fully aware of our connection with the litigation, and expected us to go on and carry through the case, and that the assignees' interest was entirely subordinate to our claim; that the debt of Walkinshaw & Voigt was only $50,000, and would not interfere with our claim." Mr. Frink denied that he had made this statement; but he must have made representations which were sufficient to allay the apprehensions of the solicitors, and inspire them with the belief that no attempt would be made to deprive them of a fair share of the amount of the decree, for they continued to render their professional services in the cause down to the final argument in the supreme court. Their confidence in Mr. Frink's assurance remained unbroken until after the mandate of the supreme court had been filed, when for the first time they heard of the second assignment, dated November 8, 1890, which practically absorbed almost the whole decree.

3. Again, there was the secret agreement between the plaintiffs and Walkinshaw & Voigt, dated April 16, 1888, by which the former agreed to assign the decree, if obtained, to the latter, to cover past and future advances to the firm of C. B. Snyder & Co., this last-named firm being composed of Mr. Frink and the widow and

daughters of C. B. Snyder, deceased. The concealment by Mr. Frink of this agreement, and of the assignments, from the solicitors, and his defective memory in reference to other transactions, prevent me from placing much, if any, reliance on his testimony. His intention appears to have been to play into the hands of Walkinshaw & Voigt, and to help them to pay off their advances to C. B. Snyder & Co. out of the decree, leaving the remainder, if any there should be, to the solicitors. His conduct throughout indicated bad faith towards the latter.

4. The counsel for the assignees contended that they were in the position of purchasers for a valuable consideration, without notice of the attorney's lien. But this does not satisfactorily appear. When they took the assignments they knew that the estate of C. B. Snyder was insolvent, and that Mr. Frink, individually, was unable to pay counsel fees, and they were thus put on inquiry as to the claims of the solicitors, of whose connection with the cause they had been informed by Mr. Frink, and at least had reason to suspect that there was no other source for the payment of those fees than a portion of the proceeds of the decree. But the want of actual notice to the assignees, as is conclusively demonstrated in the opinion of Judge DALLAS, would not enable them to take precedence of the attorney's lien. The proportion of the fund awarded to the solicitors is not excessive, when all the circumstances of the case are considered. They had declined to accept the offer of one-half of the recovery, less actual costs and expenses, and now ask for only one-third, for which they have labored and waited for over 10 years, and to which they are fairly entitled.