(63 App. Div. 356.)

FISCHER-HANSEN v. BROOKLYN HEIGHTS R. CO. et al.

(Supreme Court, Appellate Division, Second Department.  July 25, 1901.)

ATTORNEYS—LIEN—SETTLEMENT BY CLIENT—ENFORCEMENT OF LIEN—PROCEED-
INGS IN ORIGINAL ACTION.
    Code Civ. Proc. § 66, gives an attorney a lien upon his client's cause
    of action which attaches to the verdict or judgment and the proceeds
    thereof, and cannot be affected by any settlement between the parties,
    and the court, upon petition of the client or attorney, may determine and
    enforce it.  *Held*, that where an attorney was entitled to one-half of any
    sum which might be recovered, and defendant and client settled the liti-
    gation by a payment to the client without the knowledge of the attorney,
    he could not maintain an equitable action for the enforcement of the
    lien against defendant in the original action, but his remedy was an ap-
    plication in the original action to set the settlement aside as to him,
    and continue the action for the enforcement of his lien, under the provi-
    sions of the Code.

Appeal from special term, Kings county.

Suit by Carl Fischer-Hansen against the Brooklyn Heights Rail-
road Company, impleaded with Louis Olsen.  From a judgment sus-
taining a demurrer to the amended complaint, plaintiff appeals.
Affirmed.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCH-
BERG, JENKS, and SEWELL, JJ.

Carl Fischer-Hansen, in pro. per.
John L. Wells, for respondent.

HIRSCHBERG, J.  The plaintiff is an attorney and counselor at
law, and he has brought an equitable action for the purpose of pro-
curing the determination and securing the enforcement of his lien
created in an action brought by him as attorney in behalf of one of
the defendants against the other.  He alleges in his amended com-
plaint that he was retained by the defendant Louis Olsen to com-
mence and prosecute an action against the defendant the Brooklyn
Heights Railroad Company for damages for personal injuries; that
by written agreement he was to have one-half "of the verdict recov-
ered in said action"; that on the commencement of the action he
served written notice on the defendant therein that (to quote its
language) "I have a lien, under my written retainer by the plaintiff,
upon the papers and upon the subject-mater of the within-entitled
action, for my fees, services, and disbursements, and you are hereby
requested to make no settlement with the plaintiff, or any other per-
son, but to make it with the undersigned"; that after the action was
at issue the parties settled it, the defendant therein paying $1,500
to the plaintiff therein, and receiving a general written release from
the latter; that no financial provision was made for the satisfaction
of the plaintiff's lien as attorney, and that the plaintiff in such ac-
tion is financially irresponsible, and has gone to the kingdom of
Norway.  The demurrer of the respondent the Brooklyn Heights
Railroad Company was sustained, upon the ground that the amended
complaint does not state facts sufficient to constitute a cause of ac-
tion.

I think the conclusion reached by the court at special term was correct. On this appeal no authority is cited in support of the proposition that an action is maintainable under the circumstances detailed. No such action existed at common law, and none such has been created by statute. The plaintiff has an adequate remedy for the wrong of which he complains without bringing a new and independent suit, and to that remedy, as declared in a long and unbroken line of decisions in this state, he should be remitted until the legislature sees fit to authorize a foreclosure action.

The attorney's lien exists by statute. It is conferred by section 66 of the Code of Civil Procedure. The lien is upon the client's cause of action, claim or counterclaim, but it attaches to the verdict, report, decision, judgment, or final order in his client's favor, and the proceeds thereof in whosesoever hands they may come. This lien cannot be affected by any settlement between the parties, and the court, upon petition of the client or attorney, may determine and enforce it. These are all the provisions of the Code in relation to this subject, and it is not easy to perceive how they justify the plaintiff's action against the respondent. The action recognizes and upholds the settlement as inherently just and fair, and is necessarily based upon its maintenance and continuance as a valid and binding termination of the suit first brought, and as a complete extinction of the client's cause of action. There is therefore no longer in existence that upon which the Code gives the plaintiff a lien, viz. a cause of action; for it has been merged in the settlement and payment which, by the logic of this action, the plaintiff upholds and affirms. Neither can there ever be that to which such a lien attaches, viz. a verdict, report, decision, judgment, or final order in his client's favor. Assuming that the plaintiff's allegation that he was to have one-half of the verdict is to be construed as including one-half of any sum paid by way of settlement before verdict, he doubtless has a lien upon the money in his client's hands, but an action against the respondent is not necessary to the assertion and enforcement of a lien upon, and attaching to, that fund. And it is very apparent that the reaching of that fund is not the primary object of the present action, if an object at all. The action, in any view which can be taken, seems, therefore, inconsistent with the plaintiff's attitude of affirmation and approval of the settlement in question, on any theory that his statutory lien can survive such a settlement unassailed.

But in reality the plaintiff does assail the settlement, not as to its amount, but because the money has been paid over to his client without his knowledge, and he thereby, by reason of his client's insolvency or dishonesty, or both, has been defrauded. The books are full of cases where, under such circumstances, complete and adequate relief has been afforded by the courts to an attorney so abused, but always in the action in which the lien is created, and in which alone it can exist, under the present statutory conditions. That an independent action cannot be maintained for a redress of the fraud has often been expressly asserted and impliedly determined. It is true that where a defendant, as the respondent here, pays over money to an impecunious or dishonest plaintiff in wrong of the latter's

attorney, a strong argument could be made in favor of the maintenance of an action for the damages incurred, but that would be a common-law action, having no direct relation whatever to the enforcement of the lien. It would be analogous to an action brought by the assignee of a claim where the debtor has paid the assignor with knowledge, and in fraud, of the assignment. But manifestly such an action, and the analogies incident to it, lend no aid to the support of an equity suit brought ostensibly for the purpose of foreclosing a lien, but predicated in fact upon its lawful extinction. That a common-law action could not be maintained by the attorney to recover damages for the settlement was decided by the general term of the court of common pleas in Tullis v. Bushnell, 12 Daly, 217. The court held that, there being at the time of settlement no verdict, report, decision, or judgment to which his lien may attach, he could not maintain suit against the parties to the original action for damages on the ground that by the settlement his lien upon the cause of action was destroyed. Formerly, the attorney's lien attached only to the judgment, but the fact that now it covers the cause of action, and exists from the time of the commencement of the suit, can in no wise impair the force of the judicial reasoning, by which the right to a separate action for its enforcement has been denied. On the contrary, that reasoning proceeded upon the theory that, inasmuch as judgment was necessary to the creation of the lien, the client could settle before judgment of his own motion and will. It has been frequently held, however, that the parties may settle at any stage notwithstanding the existence of the lien as now created, and consequently the same condition exists in that respect as prompted the courts to deny the right to a separate action. "In looking through the reported cases referred to in argument," said Senator Verplanck in McFarland v. Wheeler, 26 Wend. 467, 476, "I was much struck with the wisdom of a remark of Lord Ellenborough, made after a long professional and judicial experience: 'In a case of lien, we should be anxious to tread cautiously, and on sure grounds, before we extend it beyond the limits of decided cases.' Wilson v. Kymer, 1 Maule & S. 165."

In Goodrich v. McDonald, 112 N. Y. 157, 164, 19 N. E. 649, 651, Judge Earl said:

"After a very careful search we have been unable to find any case where an attorney has been permitted to enforce his lien upon a judgment for his services by an equitable action."

In Randall v. Van Wagenen, 115 N. Y. 527, 531, 22 N. E. 361, 12 Am. St. Rep. 828, Andrews, J., said:

"The complaint was dismissed, and we think properly. So far as the claim of the plaintiff is founded upon the lien which the law gives attorneys for their services, there is no foundation for the action. By the common law an attorney, by commencing a suit, acquires no lien on the cause of action. The lien only arises after judgment, and is a right to have the judgment held for the debt, together with any security for the judgment, such as bail, until the lien is discharged, and to the extent of the lien payment by the defendant in the judgment to the plaintiff, after notice, to the prejudice of the attorney, will be no discharge. Pulver v. Harris, 52 N. Y. 73; Platt v. Jerome, 19 How. 384, 15 L. Ed. 623; Martin v. Hawks, 15 Johns. 405; People v. New York Common Pleas, 13 Wend. 652, 28 Am. Dec. 495. From the principle that

there is no lien until judgment, it follows that it is competent for the parties acting bona fide to settle and discontinue a suit before judgment, without the consent of the attorney, and he is remitted to his remedy against his client for his compensation. Pulver v. Harris, supra, and cases cited. But where such settlement is made collusively, for the purpose of defrauding the attorney out of his costs, courts have been accustomed to intervene, and to protect the attorney by permitting him to proceed with the suit, and, if he is able to establish a right to recover on the cause of action as it originally stood, to permit such recovery, to the extent of his costs, in the action. Coughlin v. Railroad Co., 71 N. Y. 443, 27 Am. Rep. 75, and cases cited. And the court will set aside an order of discontinuance if it stands in the way. This is an adequate remedy, and, we think, the exclusive remedy, where the suit has been fraudulently settled by the parties before judgment, to cheat the attorney out of his costs. We have found no case of an equitable action to enforce the inchoate right of an attorney under such circumstances, and no such precedent ought, we think, to be established. Goodrich v. McDonald, 112 N. Y. 164, 19 N. E. 649; Talcott v. Bronson, 4 Paige, 502; Tullis v. Bushnell, 65 How. Prac. 465. This disposes of the action so far as it seeks to enforce, by means of an independent and original suit, the equitable right of the plaintiff, sought to be defeated by the alleged fraudulent and collusive settlement."

It is quite needless that the settlement should have been made with the intent to defraud the attorney in order to brand it as unfair and improper, so as to permit the attorney to invoke this exclusive remedy in the original action. It is sufficient that it operates to defraud him; that his client either will not or cannot pay him out of the money collusively received.

In Telegram Co. v. Smith, 57 Hun, 176, 10 N. Y. Supp. 433, it was held that the attorney was entitled to an order vacating the discharge of a judgment, with leave to him to issue an execution for the amount due him, where the judgment was settled by payment to the plaintiff of the full amount, but it appeared that the plaintiff was insolvent, and therefore unable to pay for the services rendered.

In Rochfort v. Railway Co., 50 App. Div. 261, 63 N. Y. Supp. 1036, it was held that the attorney was entitled to redress in the action where the settlement was made without his knowledge, and with an irresponsible client.

In Poole v. Belcha, 131 N. Y. 200, 30 N. E. 53, Judge O'Brien clearly intimated (at page 203, 131 N. Y., and page 54, 30 N. E.) that it was sufficient to warrant the court in disregarding a settlement and release made in an action that to give full effect to them would operate, if not as a fraud upon the attorney, at least to his prejudice, by turning him over to an irresponsible client.

In Bailey v. Murphy, 136 N. Y. 50, 32 N. E. 627, the facts were similar to those set up in the amended complaint herein. The settlement was made without the knowledge of the attorney, with no provision for his payment; the client was wholly irresponsible, and immediately absconded; and the court held that an order vacating and setting aside the satisfaction as against the attorney's claim was the proper relief.

And in the recent case of Peri v. Railroad Co., 152 N. Y. 521, 46 N. E. 849, the court summed up the grounds for interference with a settlement as follows (page 527, 152 N. Y., and page 850, 46 N. E.):

"The lien operates as security, and if the settlement entered into by the parties is in disregard of it, and to the prejudice of plaintiff's attorney, by

reason of the insolvency of his client, or for other sufficient cause, the court will interfere and protect its officer by vacating the satisfaction of judgment, and permitting execution to issue for the enforcement of the judgment to the extent of the lien, or by following the proceeds in the hands of third parties, who received them before or after judgment impressed with the lien. Poole v. Belcha, 131 N. Y. 200, 30 N. E. 53; Bailey v. Murphy, 136 N. Y. 50, 32 N. E. 627; Lee v. Oil Co., 126 N. Y., at page 587, 27 N. E. 1018."

The case of Deering v. Schreyer, 58 App. Div. 322, 68 N. Y. Supp. 1015, cited by the appellant, has no application whatever to the main question considered, viz. the right to maintain such an equity action as the plaintiff has brought. In that case the action related to a specific fund in the possession of the municipal authorities, and the plaintiff therein was held entitled to maintain the action as equitable assignee of a portion of the award which created it.

From the cases cited and others which might be added, it clearly appears that the case presented is one in which the plaintiff is entitled to relief, resulting in setting aside the release and continuing the action commenced in his client's name for the enforcement and protection of his lien; that such remedy, being adequate, should be considered exclusive; that, no precedent existing for an independent equitable action, none should be established (Randall v. Van Wagenen, supra); that, if the plaintiff elects to let the settlement stand, it operates to destroy his lien as against the respondent by extinguishing the cause of action out of which such lien arose; that, with the lien destroyed, no action for its foreclosure is maintainable; and that, even if such an action would lie, it could only be for foreclosure upon the things to which, by statute, the lien is made to attach, viz. a verdict, report, decision, judgment, final order, and the proceeds thereof, in respect to none of which is enforcement of the lien sought herein as against the respondent. In fact, the suggestion that the action is for the foreclosure of a lien seems, under the existing circumstances, a mere pretense. As was said by the court in Goodrich v. McDonald, supra, "It is a peculiar lien, to be enforced by peculiar methods." As attempted to be enforced in this suit, it becomes a mere abstraction. No equities are to be adjusted; no subsequent incumbrancers cut off; no right of redemption terminated; no fund distributed; no property sold. A money judgment against the respondent, subject to general levy on execution, is the relief really sought under the guise of an intangible foreclosure. On the other hand, it is equally plain that if the plaintiff, instead of ratifying the settlement by which he has been aggrieved, should successfully apply in the original action to set it aside as to him and for his benefit, the result would be a revival of the cause of action pro tanto, which would furnish adequate and logical support for the maintenance and enforcement of his lien, under the precise provisions of the Code. The judgment should be affirmed.

Judgment affirmed, with costs. All concur.